ANTOINETTE SHERRI, Respondent, *v.* NATIONAL SURETY COMPANY OF NEW YORK, Appellant.

**Insurance — contract — notice of cancellation — trial — amendment of pleadings so as to continue action, brought on policy of burglary insurance, on binder — obligation of parties to insurance binders are according to terms of ordinary policy — where ordinary policy requires written notice of cancellation oral notification of cancellation of risk secured by binder insufficient — delay of week by broker to examine and return submitted policy not unreasonable as matter of law — waiver of requirement of filing proofs of loss.**

1. Where upon trial of an action to recover upon a contract of burglary insurance, it became a question whether the insurance was in effect

by reason of the binder or the policy, the trial justice properly permitted an amendment of the pleadings so as to continue the action upon the binder, where defendant's counsel did not claim surprise or unpreparedness to meet the issue, his only objection being to the power of the court.

2. Binding slips are a present insurance in the amount specified. They are a short method of issuing a temporary policy for the convenience of all parties, to continue until the execution of the formal one and the obligations of the parties are according to the terms of the policy in ordinary use by the company.

3. Where the policy issued by defendant and the one customarily used contained a clause to the effect it might be canceled at any time by either of the parties upon written notice and there was nothing in the binder indicating a contrary intent, written notice was required to cancel the insurance before delivery of a corrected policy.

4. Where after issuance of the binder defendant delivered to plaintiff's broker a policy of insurance, but on the same day, having received an unfavorable report on the plaintiff's risk, orally notified the broker that it canceled the risk and demanded a return of the policy, which the broker refused to do until it had insured the plaintiff elsewhere, and there is nothing in the findings or the evidence to show that written notice of cancellation was given to plaintiff or her agent, and one week later, plaintiff's home was burglarized and her property stolen, she may recover on the contract.

5. When the policy was delivered to the broker, it was supposed to examine it and return it for correction or for a corrected policy within a reasonable time. The binder was only to continue until the corrected policy was issued. The broker, therefore, could not keep the binder alive by failing to do its work; that is, accept the policy as it was or demand a corrected policy, but it cannot be said, as matter of law, that an unreasonable length of time had elapsed between the date ·of delivery of the policy and the date of the burglary, in view of all the facts and circumstances in the case, and the demand made for the return of the policy. The company at any time could have given written notice of cancellation and that would have been the end of the insurance.

6. An unquestioned letter, in evidence, written by the defendant, two days after the burglary, denying all liability and refusing to pay the loss, supports a conclusion of law embodying findings of fact that by reason of an immediate denial of liability, the defendant waived the requirement of filing proofs of loss.

*Sherri* v. *National Surety Co.*, 215 App. Div. 808, affirmed.

(Argued June 7, 1926; decided July 9, 1926.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered February 5, 1926, unanimously affirming a judgment in favor of plaintiff entered upon a decision of the court at a Trial Term without a jury.

*Sidney J. Loeb* and *Leon M. Prince* for appellant. The trial court should not have permitted plaintiff to radically amend the complaint from an action on a policy of insurance to an action on a binder or agreement to insure. ( *Underwood* v. *Greenwich Ins. Co.*, 54 App. Div. 386; *Struzewski* v. *Farmers Fire Ins. Co.*, 226 N. Y. 338.) No recovery should have been permitted on the binder because (1) the issuance of the policy superseded and extinguished the binder; and (2) the binder was no longer in effect because the condition on which it was to terminate actually occurred. (*Poste* v. *American Union Life Ins. Co.*, 32 App. Div. 189; 165 N. Y. 631; *Lipmann* v. *Niagara Fire Ins. Co.*, 121 N. Y. 454.)

*William Otis Badger, Jr.,* and *Paul D. Compton* for respondent. It was proper for the court to permit the amendment of the pleadings. (*Lipmann* v. *Niagara Fire Ins. Co.*, 121 N. Y. 454; *Struzewski* v. *Farmers Fire Ins. Co.*, 226 N. Y. 338.) The binder was in full force and effect as covering upon the property insured at the time of the loss. (*Lipmann* v. *Niagara Fire Ins. Co.*, 121 N. Y. 457; Richards on Insurance, 96.)

CRANE, J. After an unanimous affirmance by the Appellate Division, we allowed an appeal in this case, but a more thorough examination of the record and briefs convinces me that the case has been properly decided.

The plaintiff sought burglary insurance through her broker, L. T. Hollister & Co., Inc. In accordance with custom, a placer of that company made application on the risk to the National Surety Company, and received a binder insuring the plaintiff until a corrected policy

should be issued. The binder contained the following clause: " We, the undersigned Insurance Companies, hereby agree to insure property as herein described for amounts subscribed.

" This binder becomes void upon delivery of corrected policy to the office of L. T. Hollister, Inc."

The term " corrected policy " had this meaning and significance. At the time of the issuance of the binder insuring the property which is given immediately upon the application of the placer, the insurer knows little or nothing of the risk. Any and all investigation as to its nature and soundness has to be made thereafter. Should the risk prove to be hazardous, the company may cancel the insurance. When the policy is thereafter issued it is accompanied by certain declarations annexed thereto which are supposed to be the answers to questions made by the insured. The fact is that the company issuing the policy writes in these answers as it understands the facts to be. After the receipt of the policy by the broker for the insured, if any of these answers are incorrect or inaccurate, the insurer is notified and a corrected policy is issued.

The clause quoted, therefore, was to be binding until such a corrected policy was issued. The binder in this case was issued by the defendant on March 10, 1922. Four days thereafter the policy of insurance with the proposed declarations attached, was executed and sent to the plaintiff's broker, L. T. Hollister & Co., Inc. On the same day, the 14th of March, 1922, the National Surety Company received an unfavorable report on the plaintiff's risk, and so notified the broker. Notice was also given that the company canceled the risk and demanded the immediate return of the policy. This notice was not in writing, the information having been imparted by an employee of the defendant who called upon the brokers to procure the policy. The brokers refused to return the policy until they had insured the plaintiff elsewhere.

Mrs. Antoinette Sherri, the plaintiff, was not informed or aware of any of these proceedings. She had employed her brokers to insure her property.

Some time about the 21st of March, 1922, the plaintiff's home was burglarized and her property stolen. She brought this action on the policy of insurance to recover her loss. At the trial it became a question whether the insurance was in effect by reason of the binder or the policy. The trial justice permitted an amendment of the pleadings and the action was continued as upon the binder. The defendant complains of this amendment, but as its counsel did not claim surprise or unpreparedness to meet the issue, his only objection being the power of the court, we find no error in this ruling. (*Struzewski* v. *Farmers' Fire Ins. Co.*, 226 N. Y. 338; *Walrath* v. *Hanover Fire Ins. Co.*, 216 N. Y. 220, at p. 226.) So far as we are concerned, therefore, the policy is eliminated from this case, except as it may become a part of the insurance contract effectuated by the binder.

These insurance binders, so called, have been before this court in other decisions. In *Lipman* v. *Niagara Fire Ins. Co.* (121 N. Y. 454) it was held that these binding slips are a present insurance in the amount specified; that they are a short method of issuing a temporary policy for the convenience of all parties to continue until the execution of the formal one. The obligations, however, of the parties are " according to the terms of the policy in ordinary use by the company." (See, also, *Hicks* v. *British American Assurance Co.*, 162 N. Y. 284.) The policy issued by the defendant and the one customarily used contained this clause: " This policy may be cancelled at any time by either of the parties upon written notice to the other party stating when thereafter cancellation shall be effective and the date of cancellation shall then be the end of the Policy Period."

The binder issued by the defendant insured the plain-

tiff's property under the obligations of the usual policy containing this cancellation clause. Unless there was something in the binder indicating a contrary intent, written notice was required to cancel the insurance before the delivery of a corrected policy. In practice parties may, and no doubt do, at times waive such written notice, but this element does not enter into this case.

We find nothing in the binder nor in the findings of fact, unanimously affirmed, which renders this cancellation clause inoperative. The words of the binder state that it becomes void upon the delivery of the corrected policy to the office of L. T. Hollister, Inc. We may say here, in passing, that written notice given to Hollister & Co., the plaintiff's authorized agents, acting in the matter, would probably have been written notice of cancellation within the terms of the policy. The broker was acting for the plaintiff at the time in the very transaction. The notice given, however, was an oral communication in demanding back the written policy. The demand was refused until other insurance could be placed.

The findings state that customarily a binder is issued pending an investigation as to the hazards of the risk, and if the report as to those hazards is not good, the company declines to issue a policy, and cancels the binder. The trial justice further found that the binder in this case was delivered subject to such a report. Finding of fact No. 12 reads as follows:

" That on the 14th day of March, 1922, the defendant company received a report as to the moral hazard and risk in regard to the plaintiff and as a result of said report, on said date notified L. T. Hollister & Co., Inc. that the report was unfavorable and that the company cancelled the risk and demanded the immediate return of the policy of insurance."

This is not a finding that the cancellation was in writing within the terms of the policy. It is conceded that the demand for the return of the policy was made

orally. The notice of cancellation was given in the same conversation. Examining the evidence, as we have a right to do, to sustain or to make a new finding, not inconsistent with others, in order to affirm a judgment, we ascertain that no written notice of cancellation was given to the plaintiff or to her agent, Hollister & Co. That this finding No. 12 did not refer to a written cancellation is quite evident from the fact that the trial justice based his conclusions of law and judgment for the plaintiff upon the failure to give written notice of cancellation in accordance with the policy. The fourth conclusion of law reads as follows:

" That said policy provided the method of cancellation of the contract; that, in the absence of waiver, that was the sole method by which the contract could be cancelled; that there was no waiver; that the contract of insurance was not cancelled prior to the loss."

One other consideration may be necessary. When the policy was delivered to the broker, it was supposed to examine it and return it for correction or for a corrected policy within a reasonable time. The binder was only to continue until the corrected policy was issued. The broker, therefore, could not keep the binder alive by failing to do its work; that is, accept the policy as it was, or demand a corrected policy. We cannot say, as matter of law, that an unreasonable length of time had elapsed between the 14th day of March and the date of the burglary, in view of all the facts and circumstances in this case, and the demand made for the return of the policy. The company at any time could have given written notice of cancellation and that would have been the end of the insurance.

The plaintiff presented no proofs of loss as required by the policy. The findings of fact are not as full and complete as they might be. There is a letter in evidence written by the defendant, dated March 23, 1922 — two days after the burglary — denying all liability and refusing

to pay the loss. This is in no way questioned, and supports that conclusion of law made by the judge embodying findings of fact which stated: " That by reason of an immediate denial of liability, the defendant waived the requirement of filing proofs of loss."

For the reasons here stated, I am of the opinion that the judgment should be affirmed, with costs.

HISCOCK, Ch. J., CARDOZO, POUND and ANDREWS, JJ., concur; McLAUGHLIN and LEHMAN, JJ., dissent.

Judgment affirmed, etc.