F. S. Royster Guano Company, Appellant, *v.* Globe and Rutgers Fire Insurance Company, Respondent.

(Argued October 11, 1299; decided November 19, 1929.)

*Charles R. Hickox, Robert S. Erskine* and *Henry P. Elliott* for appellant. The Appellate Division erred in its conclusion of law that the plaintiff had failed to sustain the burden of proving a performance of a condition precedent contained in the " Weisbeck " clauses of the open policy. (*Valkenburgh* v. *Ins. Co.*, 70 N. Y. 605; *Porter* v. *Traders' Ins. Co.*, 164 N. Y. 504; *Jones* v. *Brooklyn Life Ins. Co.*, 61 N. Y. 79; *Murray* v. *N. Y. Life Ins. Co.*, 85 N. Y. 236; *Piedmont, etc., Ins. Co.* v. *Ewing, etc.*, 91 U. S. 377; *Sattler* v. *Hallock*, 160 N. Y. 291; *Jarvie* v. *Arbuckle*, 163 App. Div. 199; *Halperin* v. *McCrory Stores Corp.*, 207 App. Div. 448; *Waddle* v. *Cabana*, 220 N. Y. 18.) If there was any failure to obtain an approval of Captain Weisbeck within the intent of the provisions of the open policy, such failure as between the plaintiff and defendant was the failure of the agent of the defendant, and cannot

be asserted by the defendant as a bar to the plaintiff's recovery. (*Ætna Insurance Co.* v. *Willys-Overland, Inc.*, 288 Fed. Rep. 912; *Young* v. *St. Paul, etc., Ins. Co.*, 204 App. Div. 807; *Graham Brothers* v. *St. Paul F. & M. Ins. Co.*, 122 Misc. Rep. 581; *Imperial Shale Co.* v. *Ins. Co.*, 169 N. Y. 143; *Buck & Hickman, Ltd.*, v. *Ellerman & Bucknall S. S. Co., Ltd.*, 212 App. Div. 836.)

*Robert Kelly Prentice, Myron T. Townsend* and *Erwin R. Lillard* for respondent. The record establishes not only a breach of the warranty of Weisbeck's approval of the trip, but the absence of any approval of the barges required by the clause added in 1925, " per approved barges." These two requirements are not the same. (*Rockwood* v. *Northwestern F. & M. Co.*, 26 Fed. Rep. [2d] 824; *Hendricks* v. *Commercial Ins. Co.*, 8 Johns. 1; *Northland Nav. Co., Inc.*, v. *Am. Merchant M. Ins. Co.*, 214 App. Div. 571; *Van Wickle* v. *Mechanics, etc., Ins. Co.*, 97 N. Y. 350; Phillips on Ins. § 2122; *Carey* v. *Home Ins. Co.*, 235 N. Y. 296; *Craig* v. *U. S. Ins. Co.*, 1 Peters C. C. 410; *Young* v. *St. Paul Fire & Marine Ins. Co.*, 204 App. Div. 807; *Smith* v. *Northwestern F. & M. Ins. Co.*, 246 N. Y. 349; *Pier* v. *Finch*, 24 Barb. 514; *Kelly* v. *N. Y. C. Ry. Co.*, 192 N. Y. 97.) The conditions and warranties of the policy were binding on the plaintiff as upon W. E. Hedger Company, plaintiff's assignor. (*Conner* v. *Manchester Assurance Co.*, 130 Fed. Rep. 743; *The Tampico*, 270 Fed. Rep. 537; *Imperial Shale Brick Co.* v. *Ins. Co.*, 169 N. Y. 143.)

CRANE, J. On April 16th, 1924, the Globe and Rutgers Fire Insurance Company issued an open policy of insurance to W. E. Hedger Co., Inc., insuring any and all goods or merchandise while being transported by barge or barges, owned and operated by the said W. E. Hedger Co., Inc. The plaintiff in this case, the F. S. Royster Guano Company, is a Virginia corporation, with its principal office in Norfolk, Va. In 1925 this plaintiff

and the Hedger Company entered into a contract of transportation. The Hedger Company operated a freight forwarding service by means of barges. It contracted or arranged for taking phosphate rock from the steamer or steamers at New York, and transporting it on four barges through the Hudson river, New York State Canal, the Great Lakes, to plaintiff's plant at Toledo, O.

The phosphate rock was owned by the plaintiff. The barges were owned, or under the control of, the W. E. Hedger Co., Inc. By the open policy of insurance, above referred to, the W. E. Hedger Co., Inc., arranged for the insurance on the plaintiff's property while in transportation. This was done by the issuance to the plaintiff of certificates by the Hedger Company with the authority of the defendant. This certificate of insurance, one for each of the four barges, certifies that W. E. Hedger Co., Inc., is insured under and subject to the conditions of open policy No. 377,173 of the Globe and Rutgers Fire Insurance Company, on an amount specified and on a specified number of tons of phosphate rock on board the named barge " at and from New York to Toledo, Ohio." Loss, if any, is payable to the insured, or its order, upon the surrender of the certificate. The following paragraph is contained in the certificate: " It is understood and agreed that this certificate represents and takes the place of the policy and conveys all the rights of the original policy holder (for the purpose of collecting any loss or claim), as fully as if the property were covered by a special policy direct through the holder of this certificate, and free from any liability for unpaid premiums."

It also contains some of the warranty clauses which are contained in the open policy, or the customary form of marine insurance policy. We also find a provision that the insurers are to be subrogated to all the rights of the assured under their bills of lading or other contracts of carriage.

Much might be said in favor of the claim that these

certificates as to the owners of the cargo constituted the insurance agreement or contract with the insurance company free of any of the conditions or terms contained in the original or open policy issued to the Hedger Company. (*De Monchy* v. *Phœnix Ins. Co.*, 44 Times L. R. 364, March 5th, 1928; *Brandyce* v. *Globe & Rutgers Fire Ins. Co.*, 252 N. Y. 69.)

The words of the policy and the rider, however, will not stand this strain; such a construction becomes too attenuated. The insurer and the insured at the inception of the risk intended all the attached papers to be read together. Only after loss does the hope arise that the certificate may stand by itself. We must consider the conditions of the open policy as part of the certificates issued on the cargo, except as inconsistent therewith.

The four barges with the phosphate rock, on the 19th of October, 1925, left the port of New York, proceeded up the Hudson river in tow of a tug furnished by the W. E. Hedger Co., Inc. The destination of these barges was at all times Toledo, O. On November 7th, 1925, the barges started from Buffalo to cross Lake Erie, and suffered damage and loss in a storm. The plaintiff has brought this action on its certificates of insurance to recover for the loss of its phosphate rock. The defendant has resisted payment under a clause of its open or original policy referring to an approval required of Captain Weisbeck. The point in this case is the meaning of the application of this approval. What was it that Captain Weisbeck was to approve, and whatever it was, did the captain do it?

The schedule of rates annexed to the policy refers to trips from New York to Buffalo, from New York to Hamilton, Ont., from New York to Cleveland, O. In other words, it was within the contemplation of the parties that the barges of the Hedger Company were to go to other places than Buffalo, after passing through the Hudson river and the canals. The trips on the lakes were to be made only between May 1st and November 1st. A

provision of the special form attached to the policy provided: " warranted all trips on Great Lakes approved by Captain Weisbeck, as to tug, barges, number of barges in tow, weather, etc." On May 15, 1925, the Globe and Rutgers Fire Insurance Company, by another rider, referring to policy No. 377,173, provided that " trips on Great Lakes to be approved by Surveyor Weisbeck."

Captain Weisbeck did not give his approval to this trip starting November 7th of the barges on the Great Lakes. The plaintiff does not claim that it obtained or that the Hedger Company obtained any such approval. How the approval of Captain Weisbeck was to be obtained and how it was to be given or recorded is not stated in the policy or any of the riders. Captain Weisbeck was stationed in Buffalo. No written approval was required; apparently it could have been given personally by word of mouth, or by a nod, by telephone or any other means indicating consent. The whole matter was left in a very vague and unsatisfactory condition. Apparently Weisbeck kept no record of his acts in this particular and never communicated any of his approvals or disapprovals to the insurance company. All we have in the case is the statement or warranty that trips on the Great Lakes are to be approved by Captain Weisbeck. The shippers of the phosphate rock, the F. S. Royster Guano Company, were in Norfolk, Va. The insurance was taken out by the defendant's agent, the W. E. Hedger Co., Inc. The open policy issued by the defendant authorized the Hedger Company to issue these certificates of insurance to its customers. In placing the insurance the Hedger Company was, therefore, acting in behalf of the insurance company. There is no claim, however, that in placing the insurance the Hedger Company acted improperly or contrary to custom. The Virginia shipper might have insured the cargo for itself. It left the matter, however, to the owner of the barges or to the corporation handling the transportation. We, therefore, are dealing with this

policy of insurance, or this kind of insurance as contracted for by the parties. That it may have been foolish or reckless for the owners of the transported property to leave the fulfillment of future obligations, sometimes called promissory warranties, to the carrier, or, in other words, to make promissory warranties, the keeping of which was beyond their control, is a matter outside our field of discussion. This is a matter of business and not a matter of law. The insurance was taken out with the warranty that the insurance would terminate unless trips on the Great Lakes were approved by a certain selected individual named Captain Weisbeck. So long as shippers are willing to take these so-called certificates of insurance, binding them to conditions in open policies of which they know nothing, there will necessarily arise as a consequence losses which were never anticipated and could readily have been avoided. An insured is supposed to know the nature of his insurance contract. He cannot know it when he receives merely a certificate of insurance issued under an open policy and bound by the conditions of that policy, which policy never comes into his possession or is held in a place where he cannot readily read its contents. Such loose methods of doing business have given rise in this case to much discussion over the word " trip " and the word " approval."

What was Captain Weisbeck to do? What was he to approve? When was the approval to be made and how? What were the trips referred to? Did " trips " mean each individual trip or did it mean that, after an examination of the barges and equipment, one approval of the use of these upon the Great Lakes was sufficient for the season? The insured, as we read the policies and the riders, warranted that the trips upon the Great Lakes would be approved by Captain Weisbeck. Was this approval given?

The trial justice charged the jury that if at the beginning of the season, that is, in May or June, Captain Weis-

beck had examined these barges and given his approval to their use upon the Great Lakes, the terms of the policy had been complied with. The question of fact arising upon this point was due to the oral testimony offered by the plaintiff to explain the meaning of the words " approval " and " trips," claiming an ambiguity arising from their use. William E. Hedger, in behalf of the plaintiff, testified that he had a conversation early in 1925 with Mr. Donovan, representing the defendant, in relation to this so-called Weisbeck clause. He said: " I told him at that time that it was impracticable, as it said that Weisbeck must approve all trips on the Great Lakes. I told him that he knew that the breadth of our service was on Lake Ontario and Lake Erie, over a radius of 800 miles, and that it would be impossible — impracticable for us to wait for Mr. Weisbeck to jump from Toledo or Buffalo, or hold our tows in different ports waiting for him to approve the trip. He said he appreciated all that * * * that it was the idea to have the equipment inspected at the beginning of the season, so that he would know what we were starting out with, what kind of tugs we had, what kind of a main hawser, what kind of intermediate hawser. He said that was all that was required. * * * He said * * * go ahead with your inspection of the first trip."

Michael Widener, in behalf of the plaintiff, testified that about June 13th, 1925, he telephoned Mr. Weisbeck to come down and inspect four barges and a tug and the equipment that they were to use that year. He (Weisbeck) said " the equipment was A No. 1 and that he would approve the use of the equipment for the rest of the season."

The trouble with the judge's charge based upon this testimony has been clearly pointed out by the Appellate Division. The four barges examined by Captain Weisbeck and approved in June of 1925 were not the barges lost in the storm on Lake Erie in November. These latter

barges were never approved by anybody. The Appellate Division was justified, therefore, in reversing the judgment for the plaintiff. The question remains whether that court was justified in dismissing the complaint.

If, by any reasonable interpretation, construing this open policy and the riders most favorably for the insured, there is any question of fact which may help the plaintiff, the complaint should not have been dismissed but a new trial should be granted. We have looked in vain for such an issue of fact, or for any interpretation which can be given the approval clause which would entitle the plaintiff to recover.

When the phosphate rock was taken from the ship in the harbor of New York and placed aboard the Hedger barges, its loss was insured against from that time until its arrival in Buffalo. No approval was required from Captain Weisbeck of the barges or the trip through the Hudson river, the canals or at Buffalo. When, however, these so-called boats of the "harbor box type" started across Lake Erie the plaintiff's insurance terminated unless Captain Weisbeck, in some way, approved the trip, approved their going on the Great Lakes. Here was a promissory warranty which the plaintiffs were bound through Hedger Company to maintain in order to keep the insurance. Assuming, as we well may, that the rider of May 15th, 1925, modified the special form attached to the policy of April 16th, 1924, so that trips on the Great Lakes were the only things to be approved, we are convinced that the meaning of this clause in this later rider applied to these barges which were to make the venture on the lakes in November. It might be a reasonable interpretation to say that if the barges had been previously approved for use upon the Great Lakes about the time that they made the trip, this would have been a fair compliance with the condition or warranty. The fact is, however, that these barges were never approved for such a use. But even then it seems to us that we should not

strain at the meaning of words; we should give them their usual and customary meaning unless it clearly appears that another purpose or intention was in the minds of the parties. We have had occasion to say before that insurance policies are merely contracts to be interpreted like any other contract, bearing in mind the custom or nature of the business and the terminology receiving judicial sanction. (*Kean* v. *National Surety Co.*, 241 N. Y. 252, at p. 258: "An insurance policy or bond is no different than any other contract, and comes within the same rules of construction. The purpose and attempt of the courts is to give to the language used by the parties its usual and ordinary meaning in the light of all the circumstances and conditions, having in mind, as did the parties, the nature of the transaction.") " Trip " or " trips " is an ordinary word meaning " a journey," a going from one place to another. (Webster's New Internat. Dict.) Considering the nature of this insurance, the difference in the risk between travel on the river or canal and on an inland sea, the meaning of the clause requiring the approval of Captain Weisbeck of trips of the Hedger barges on the Great Lakes, is that the craft were not to venture on the journey, in other words, to leave Buffalo until the trip had his approval. This seems reasonable, and is the contract obligation no matter how inconvenient of performance. We do not mean to say that each individual trip required the approval, but at the least, the approval of the particular barges leaving should have been so recently given as to come within the scope and purpose of the clause. There is no claim that this was ever done.

The present contention of the plaintiff that the approval by Captain Weisbeck was to be of the equipment and not the barges or the trips is not borne out either by the terms of the policy or the oral testimony given at the trial. The witness Widener, above referred to, says that he asked Mr. Weisbeck to come down and inspect four

barges and a tug " and the equipment that we were to use that year." The equipment referred to the barges as well as the tug, hawsers, etc. It is difficult to understand why an inspection should be made of hawsers, tugs, etc., and not the barges, when the barges carried the property insured.

We have not overlooked the case of *Ætna Ins. Co.* v. *Willys-Overland, Inc.* (288 Fed. Rep. 912.) That case likewise dealt with certificates of insurance issued under an open policy and the loss of a vessel carrying goods of the certificate holder. The insurance company paid the owner of the goods and then sued the original insured for loss sustained in failing to keep its obligations to the insurance company. The defense set up that the payment to the certificate holder was a voluntary payment for the reason that if the insurance company had any claim against the original insured, it had a like claim and could use it as a defense against the certificate holder. The court said " no," this was not so, for two reasons. The certificate holder was not bound by the acts of the one issuing the certificate, the person insured in the open policy, *first*, because the claim of the insurance company against the insured arose out of the custom of marine insurance, and *second*, the duty of reporting the name of the vessel on which the goods were shipped was a duty imposed upon the insured under the original policy as a part of the authority conferred to issue certificates of insurance; in other words, it was a duty which the insured owed to the insurer as its agent. As stated in the beginning of this opinion, there were certain things which the Hedger Company did as agents of the insurer; it procured the insurance of the plaintiff's goods. It issued the certificate of insurance as the defendant's agent and for every act and representation in connection with the inception of that contract it was acting as the defendant's agent. Those matters, however, which were thereafter to be performed by the insured property

owner, and in the nature of promissory warranties, were matters which the insured or its agent was to do, matters affecting the risk or a possible increase of risk. One of these was to procure the approval of trips on the Great Lakes, a greater risk than trips on rivers and canals. The approval in our judgment was not to be obtained by the Hedger Company as the agent of the insurer, but rather as part of the duty or obligation falling upon the insured.

For this reason the judgment of the Appellate Division should be affirmed, with costs.

CARDOZO, Ch. J., POUND, LEHMAN, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Judgment affirmed.