**NEW YORK & ORIENTAL S. S. CO., Inc., v. AUTOMOBILE INS. CO. OF HARTFORD, CONN.**

Circuit Court of Appeals, Second Circuit.
January 20, 1930.

No. 175.

462

Herman Goldman, of New York City (Elkan Turk, of New York City, and Benjamin Wiener, of Brooklyn, N. Y., of counsel), for appellant.

Bigham, Englar & Jones, of New York City (Arthur W. Clement and Henry J. Bogatko, both of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and MACK, Circuit Judges.

SWAN, Circuit Judge (after stating the facts as above). The plaintiff undertakes to maintain the position that the one-year limitation for suit, contained in the policy, forms no part of the contract of insurance made between the parties. Counsel's contentions are (1) that the certificate itself evidences a complete contract of insurance of the collectible freight against the peril of stranding and resulting jettison; and (2) that, if the certificate alone is not sufficient to disclose what risks are covered, then reference may be made to the policy, but only for the purpose of completing the terms of the certificate, and not for the purpose of defeating it by incorporating the one-year clause. Unless constrained by controlling authority, we cannot give our assent to either contention.

1. The certificate recites that defendant "insured under policy No. 100000" in a stat-

ed amount "on collectible freight." The certificate itself contains no definition anywhere of the perils insured against—with a possible exception, not material to the present suit, of "the risk of breakage, leakage or rust," as provided in the breakage clause in the addenda. Plaintiff argues that insurance against the peril of stranding is to be found by implication from the following provisions, the one first quoted being typewritten on the face of the certificate: "Free of particular average under 3%. Each interest separately insured or vessel be stranded, sunk, burnt, on fire, or in collision, including lighterage." And the latter being printed among the addenda: "1. Warranted free from particular average unless the vessel or craft be stranded, sunk, burnt, on fire or in collision."

The first clause is so phrased as to be almost unintelligible. An identical clause appears in the binder. We construe it as an attempt to state that the insurer will not be liable in case of partial loss, unless that loss with respect to each interest insured exceeds 3%, or unless the vessel (or the lighter, if cargo was being lightered) was stranded, sunk, etc. So construed, it is similar to the second clause above quoted. That clause has a long legal history, during which it has acquired a precise meaning, as expounded in London Assurance Co. v. Companhia de Moagens, 167 U. S. 149, where at page 162 of the opinion (17 S. Ct. 785, 790, 42 L. Ed. 113) by Mr. Justice Peckham, it is said:

"The English courts have held, and do now hold, that the expression, 'free of particular average unless the vessel be stranded,' meant that if a loss occurred during the adventure, although from a cause not related in any way to the stranding of the ship, the insurers were liable upon the general language of the policy."

The clause starts by excepting from coverage partial losses; it then states a condition upon which the exception shall disappear. Read logically, it does not define the risks at all, but states an exception to an exception. The liability of the insurer for losses due to stranding is not founded upon implication from the exception, but "upon the general language of the policy." It is impossible to treat the certificate as the complete contract of insurance; reference must be had to the policy to determine what risks are covered. There one finds, in dignified and antique phrase:

"Touching the adventures and perils which the said Automobile Insurance Company of Hartford, Connecticut, is contented

to bear and take upon itself in this voyage, they are of the seas, fires, pirates, rovers, assailing thieves, jettisons, criminal barratry of the master and mariners, * * * and all other like perils and disasters that have or shall come to the said goods and merchandises, or any part thereof."

2. If we must incorporate that portion of the policy which defines the risks, on what theory are we to stop there? It is true that the terms of the policy cannot be incorporated in toto into the contract of insurance between the parties. The policy is framed expressly for cargo insurance; many of its clauses are plainly inapplicable to freight insurance, and some are inconsistent with provisions found among the addenda to the certificate. Hence incorporation of terms of the policy requires selection among them. Plaintiff contends that we may incorporate only the statement of perils insured against; but such a rule would be in the teeth of any rational theory of contracts, and quite contrary to generally applied principles of incorporating by reference the provisions of one document into the terms of another. See Brandyce v. Globe & Rutgers Fire Ins. Co., 252 N. Y. 69, 168 N. E. 832; Royster Guano Co. v. G. & R. Fire Ins. Co., 252 N. Y. 75, 168 N. E. 834.

We see no principle by which the selective process is to be guided, except to adopt all provisions of the policy which are appropriate to freight insurance and not expressly or impliedly excluded by the terms of the certificate. The one-year limitation is certainly as appropriate to insurance on freight as to cargo insurance, and nothing is found in the certificate inconsistent with the inclusion of such a limitation. Clause 8 of the addenda, which relates to reporting losses promptly, cannot be so regarded. Indeed, the policy itself contains a clause as to reporting losses (perhaps inconsistent with said clause 8), as well as the one-year limitation for suit.

It is urged that the recital, "This certificate represents and takes the place of the policy," etc., and the references to "liability under this certificate," indicate an intention to substitute the certificate for the policy. But this is refuted, not only by the opening recital that defendant has "insured under policy 100000," but also by the warehouse to warehouse clause ("including, subject to the terms of the policy, all risks covered by this policy"), by the adjustment clause ("subject to the conditions of the policy"), and by the necessity of looking to the policy

to find the risks covered. True, the warehouse clause, to which reference has just been made, is doubtless inapplicable to a freight insurance; but this, we submit, is irrelevant, when one is considering whether the language of the certificate discloses an intent to incorporate only so much of the policy as defines the risks insured against, or to incorporate all applicable terms of the policy.

Courts justly feel an inclination to construe obscurely worded documents against the party who puts them out. The practice of insurance companies to evidence their contracts by certificates containing a general reference to open policies, which are retained in their own offices and embody all sorts of provisions, many inappropriate to the insurance covered by the certificate, results in the two documents together presenting a jumble of inconsistent, redundant, and irrelevant clauses. Such a practice cannot fail to promote litigation, and well merits the harsh criticism directed against it by the English judges in the De Monchy Case, about to be mentioned. Nevertheless, for the reasons already stated, we are of opinion that the limitation of suit clause contained in the policy should be deemed a part of the contract made by the parties, unless we are constrained to an opposite conclusion by authority.

3. The plaintiff relies upon a recent decision of the House of Lords. Phœnix Ins. Co. v. De Monchy, 45 Times L. R. 543. If that august tribunal has laid down a controlling principle, we should hesitate to depart from it; for in matters maritime, and especially insurance, the importance of conformity between the English law and our own has been often emphasized. See The Eliza Lines, 199 U. S. 119, 128, 26 S. Ct. 8, 50 L. Ed. 115, 4 Ann. Cas. 406; Queen Ins. Co. v. Globe & Rutgers Fire Ins. Co., 263 U. S. 487, 493, 44 S. Ct. 175, 68 L. Ed. 402; The Turret Crown, 297 F. 766, 777 (C. C. A. 2); The Governor Ames, 187 F. 40, 44 (C. C. A. 1); Mellon v. Federal Ins. Co. (D. C. N. Y.) 14 F.(2d) 997, 1004.

In the De Monchy Case, suit was brought against the insurer to recover loss due to leakage of a cargo of turpentine, shipped from Tampa, Fla., to Rotterdam, Holland. The plaintiff, De Monchy, had contracted by cable to purchase the turpentine upon c. i. f. terms. A certificate of insurance was delivered to him with the invoice and bill of lading. The insurer set up as a defense to De Monchy's suit a one-year limitation for suit, which was contained in the open policy under which the certificate had been issued, but which was not referred to in the certificate.

The trial court, the Court of Appeal, and the House of Lords, all held the defense insufficient, although the suit was started after the expiration of the year. It is difficult, from the numerous opinions delivered, to extract the precise principle for which the case stands. But first of all certain important differences of fact between that case and the one at bar should be noted.

De Monchy was a c. i. f. holder, who had received a certificate which on its face said, as does the one at bar, that it takes the place of the policy. He had bought documents in Holland; the policy which the insurer sought to have incorporated was thousands of miles away in America, and for practical purposes inaccessible to him. It is certainly much easier to make an estoppel out of the language of the certificate in the hands of such a holder than in the hands of the original insured. In the case at bar the plaintiff sent his broker to get the certificate, and there is not a shadow of evidence that he could not have seen the policy. This distinction might well have turned the scales with the English judges.

Lord Dunedin says that the certificate and policy must be read together, but that the certificate is the "determinative" document, and the policy will be looked to no further than to define the risks, but he also says: "Common sense and fairness revolt against the idea of this [the one-year clause] being enforced against the holder or indorsee of the certificate," who "could never have seen the policy." And Lord Sumner explicitly cautions against the assumption that men may not contractually bind themselves by language they have not seen. His disposition of the case seems to have turned largely upon the sequence and form of the documents which made up "the policy." First, there was a regular form of policy, issued, we take it, to the seller of the turpentine; then a memorandum giving an option to cover war risks, from which the policy form was warranted free; then a second memorandum to cover turpentine leakage, which also was not covered by the form of policy; third, a memorandum which for the first time introduces and makes special provision for certificates of insurance to be issued by the original insured; and, lastly, an addendum which provides the terms as to measurement of leakage which were actually embodied in the certificate in question.

Lord Sumner admits the necessity of a selective process of incorporating into the contract of insurance some of the terms of the policy, but he concludes from an examination of the above-mentioned documents that "the limitation clause, which is a limitation upon, not a right of, the original assured, was no part of the certificate scheme, which is directed to transferring rights in globo, but imposes liabilities only when they are mentioned." He says further:

"The language of this clause bears out this view. It begins thus: 'It is agreed that no suit or action for the recovery of any claim arising under this policy. * * *' Now the claim here is one for leakage, from which this 'policy,' in the sense in which it is used in the clause, was free. It was a claim arising only under what I have called the second and fourth documents. Further, the great majority of the provisions of these documents do not use the expression 'it is agreed' and in those few which do use it, all, unless I have overlooked something, are provisions where the parties agreeing are the insurance companies and the original assured only. It appears to me that, in the absence of any language calculated to do so expressly, this personal agreement, to which the plaintiffs were not parties, and which, even between the original parties, is so incomplete that it may be doubtful if an action could be brought on it, is not introduced into the document on which their rights arise by any recognizable mode of reference, and I am of opinion that the decision of the Court of Appeal was right and that it should be affirmed."

Lord Atkin also distinguishes between the original insured and the certificate holder. He expresses doubt whether any claim could arise "under the policy," and says: "But without deciding the case on this ground, I am of opinion that the clause is not one which binds the certificate holder." It may be noted that the wording of the one-year clause differs slightly in the two cases. There the limitation was upon any "claim arising under this policy"; here it is upon any "claim by virtue of this policy." Mr. Justice Russell, in the Court of Appeal, noted the possibility of distinguishing between these phrases. De Monchy v. Phœnix Ins. Co., 44 Times L. R. 364, 369.

■ From this consideration of the opinions we are not convinced that the House of Lords would have made a similar decision, had they been dealing with facts such as are before us. Indeed, we believe they would not. Here the certificate holder and the original insured are the same. The insurance contract was originally made by a "binder," and would be construed to incorporate the terms of the insurer's usual policy. Sherri v. National

Surety Co., 243 N. Y. 266, 153 N. E. 70; El Dia Ins. Co. v. Sinclair, 228 F. 833 (C. C. A. 2). Therefore, before the certificate was issued, the binder contract incorporated the one-year limitation for suit contained in the policy. In issuing the certificate, which expressly refers to the policy and does not in itself constitute a complete contract of insurance, there is no reason to suppose that the parties intended to modify their existing contract any further than the terms of the certificate indicate. On the contrary, the broker's "closing slip," in response to which the certificate was issued, expressly stated: "Except as noted below, rates and conditions as per original binder. Changes or corrections, if any. As per above note our letter 11/22/18." This letter concerned only deviation to Lisbon to take on cork. Hence we think the case clearly distinguishable from De Monchy's, and any allegiance we owe to the English law in maritime matters need not constrain our present decision. The American authorities most nearly in point, though possibly distinguishable by reason of somewhat different phraseology in the certificates there involved, tend to support it. Brandyce v. Globe & Rutgers Fire Ins. Co., supra; Royster Guano Co. v. G. & R. Fire Ins. Co., supra.

The judgment is affirmed.

MACK, Circuit Judge (concurring). I concur in the result, but on the ground last stated in Judge SWAN'S opinion.

The contract of insurance was clearly effectuated by the binder, which referred to and included the entire policy. That contract not only was not intended to be altered by the certificate, but by the express terms of the closing note was intended to be in accordance with the binder, except in one respect expressly stated therein as well as in the certificate. Therefore the certificate, issued immediately on the receipt of the closing note, must be interpreted in the light of this history of the transaction. So interpreted, the entire policy remains a part of the insurance contract.

It therefore becomes unnecessary to consider whether or not the House of Lords case is to be distinguished from the New York cases on the difference in the exact language used in the respective certificates, and, if not, then whether or not we should follow the House of Lords case in its interpretation of the certificate, relevant terms of which are identical with those of the certificate in this case.