Hannah Jennings and Fred W. Hall, Appellants, v. Illinois Automobile Club and United States Mutual Insurance Company, Appellees.

Gen. No. 42,504.

Opinion filed June 16, 1943.

ROBERT J. MILLMAN and GEORGE L. SIEGEL, both of Chicago, for appellants.

WYATT JACOBS, WALTER A. CHRISTOPHER and PHILIP G. BRENNAN, all of Chicago, for appellees.

MR. JUSTICE FRIEND delivered the opinion of the court.

On November 24, 1938 Fred W. Hall, one of the plaintiffs herein, was involved in an automobile ac-

cident in the State of Missouri, which resulted in the death of Raymond Jennings, who was a passenger in Hall's car. Hannah Jennings, the other plaintiff, brought suit in the circuit court of Cook county for the wrongful death of her deceased husband, and had judgment against Hall for $10,000.

A month prior to the accident Hall had applied for membership in the Illinois Automobile Club, which furnished its members, in addition to other services enumerated in the application, with a "One Year Public Liability and Property Damage Insurance Policy" for $5,000. Hall's application was accepted November 16, 1938, and two days later the club so advised him by letter, stating that the insurance policy to which he was entitled with his membership, was being prepared, and inclosing a 30-day binder of the United States Mutual Insurance Company, expiring December 16, 1938, which referred to a "Gold Star Policy" but did not set forth any of the terms thereof. At the bottom of the binder the applicant was advised, in bold-faced type, to "Keep This Binder Until You Receive Your Policy," and was invited to examine "The policy upon which this Binder is predicated . . . at the Home Office of the United States Mutual Insurance Co., 3401 South Michigan Avenue, Chicago." Upon the occurrence of the accident Hall wired the automobile club, and received in reply a telegram from the insurance company inquiring as to the nature of the accident. The policy which the insurance company proposed to issue would not have insured Hall against loss for or damage sustained "by any person whatsoever if such death, injury or damage was sustained while riding in or upon the automobile described in this policy," and accordingly the insurance company disclaimed liability upon the sole ground that the proposed policy did not protect Hall against claims made by passengers in his automobile.

Following the entry of judgment against Hall for $10,000, he assigned his claim against both defendants

in this proceeding to Mrs. Jennings and brought suit jointly with her under two separate counts, one against the Illinois Automobile Club for its alleged breach of contract in failing to protect him to the extent of $5,000, and the other against the United States Mutual Insurance Company, predicated on the theory that by a liberal construction of the proposed policy plaintiffs were entitled to recovery because Jennings, although a passenger in Hall's automobile at the time of the accident, nevertheless died in the hospital and not "while riding in or upon the automobile described in this policy." The cause was tried by the court without a jury, and at the conclusion of plaintiffs' case judgment was entered for defendants, from which an appeal has been taken.

Plaintiffs' claim against the automobile club is predicated upon the breach of an agreement to furnish a public liability insurance policy, which contract does not designate any specific insurance company nor mention any restrictions or limitations to be contained in the policy, and they argue that under the circumstances the automobile club was obligated to furnish a policy containing only such conditions and limitations as were usual in automobile public liability policies, and that it cannot avoid its obligations by furnishing a policy with unusual provisions. As heretofore stated, no policy was ever issued, but when Hall's application for membership in the automobile club was accepted he was so notified in writing and advised that while the policy was being prepared the club was sending him a binder "good for thirty days." Notwithstanding plaintiffs' contention that the club's letter to Hall indicates an unconditional acceptance of his application, which "is not qualified by nor made subject to the provisions of the proposed policy or the binder," we think his claim and that of his assignee, Mrs. Jennings, must be considered in the terms of the insurance company's binder which accompanied the acceptance and thus became a part of the agreement

upon which his suit is predicated. The acceptance of his application referred to the binder and accompanied it, and it is an elementary rule that where an acceptance is qualified by a specific statement of the obligation to be assumed, there is either a contract in the terms of the acceptance or no contract at all. The application defines the services available to members, specifies in considerable detail the benefits and obligations of the contracting parties, and the binder invites examination of the form of policy to be issued to the applicant, who had the right to repudiate the acceptance as made if the policy did not conform to his expectations. Under the circumstances the question resolves itself into a determination of the obligation under the insurance binder.

Plaintiffs cite and discuss various decisions purporting to hold that upon an agreement to procure a policy of insurance which is silent as to conditions, it will be presumed that the parties contemplate a form of policy containing such conditions and obligations as are usual in such cases or have been used before between the contracting parties. *Eames v. Home Ins. Co.*, 94 U. S. 621, 24 L. Ed. 298, is one of the decisions cited. In that case plaintiff had carried insurance with the defendant for two years. After the policy had lapsed plaintiff made a new application. The general agent of the company declined the request on account of the rate offered, but after considerable correspondence between the parties plaintiff agreed to pay the rate required by the company. Thereupon the local agent requested that the policy issue, but before it issued a loss was incurred. The company interposed the defense that the preliminary contract to insure "did not state what kind of a policy . . . Eames wished to have." The court rejected that contention and said: "It is sufficient if one party proposes to be insured, and the other party agrees to insure, and the subject, the period, the amount, and the rate of insur-

ance is ascertained or understood, and the premium paid if demanded. It will be presumed that they contemplate such form of policy, containing such conditions and limitations as are usual in such cases, or have been used before between the parties. This is the sense and reason of the thing, and any contrary requirement should be expressly notified to the party to be affected by it." There was no contention in that case that plaintiff's loss failed to come within the policy the defendant would have issued, and therefore the court was not called upon to define with exactness what was intended by the statement that the conditions would be such as were "usual in such cases." Likewise, in *Cottingham v. National Mut. Church Ins. Co.,* 290 Ill. 26, and *Newark Machine Co. v. Kenton Ins. Co.,* 50 Ohio St. 549, 35 N. E. 1060, also relied upon by plaintiffs, the issue was whether there was any contract in effect at all, no issue having been raised with respect to the compliance of any particular provision. In *Carlson v. Grimsrud,* 223 Wis. 561, 270 N. W. 50, the defendant set up noncompliance with a condition in a casualty policy, an exclusion similar to the one contained in the policy under consideration, but plaintiff there testified to conversations had with the agent at the time the policy was ordered, and the trial court specifically found that the agreement was to issue a policy "without exclusion from the insuring agreement on account of the fact that the injured person was an occupant of the insured automobile." In the case at bar plaintiffs do not charge fraud or misrepresentation, but stand solely upon the application for membership and the acceptance thereof. It must be assumed that when making his application Hall was satisfied with the prospect of securing the insurance coverage that the automobile club proposed to furnish, and there is nothing to indicate that he interrogated the solicitor concerning the terms of the proposed policy. The only case cited by plaintiffs which would

seem to be contrary to the other decisions upon which they rely is *Salisbury v. Hekla Fire Ins. Co.*, 32 Minn. 458, 21 N. W. 552, but that case may be distinguished on the facts. Plaintiffs had entered into an oral contract of insurance with the defendant. There was no binder or letter referring to the proposed issuance of any particular policy, and the loss occurred while the parties were operating under a parol agreement. The court held that defendant was not entitled to take advantage of the exclusions which were to be part of its policy when issued.

Decisions in Illinois are in substantial agreement as to the construction to be placed on binders or memoranda which do not attempt to prescribe or restrict the terms of insurance, but merely undertake to give coverage and refer to the policy to be delivered thereafter. In *Trichelle v. Sherman & Ellis, Inc.*, 259 Ill. App. 346, we considered at length the legal effect of a so-called binder which did not purport to state any of the terms of coverage but expressly referred to a policy to be delivered. The property was destroyed before the policy issued. As in the case at bar, the binder was held to be a preliminary contract for present insurance as of its date, and as in the instant proceeding there was no contention that anything was said or done that created any different understanding than was expressed in the preliminary agreement. After reviewing the leading cases on the subject, we expressed the opinion that it "becomes a mere question of law, in such a case, whether there may be read into such contract the terms and conditions of the contemplated policy to which said contract refers," and answered the question by concluding "where a binder does not attempt to prescribe or restrict the terms of insurance but merely undertakes to give coverage and refers to the policy to be delivered thereafter the obligations of the parties are, as stated in the *Lipman* and *Sherri* cases,

supra, 'according to the terms of the policy in ordinary use by the company.' " The frequently quoted decisions of *Lipman v. Niagara Fire Ins. Co.,* 121 N. Y. 454, 24 N. E. 699, and *Sherri v. National Surety Co.,* 243 N. Y. 266, 153 N. E. 70, both enunciated the rule that the true construction of the binding slip only obligates the insurer according to the terms of the policy in ordinary use by the company. The same rule was announced in the early case of *Concordia Fire Ins. Co. v. Heffron,* 84 Ill. App. 610, where under an oral contract of insurance the court approved the authorities holding that " 'a memorandum that a subject "is insured," or "shall stand insured," means that it is insured, or shall be so, according to the ordinary form of policy used in the office when the memorandum is made.' " As we pointed out in the *Trichelle* case, the theory underlying these decisions "recognizes a practical situation and the manifest mutual intent and understanding of the parties with regard thereto, that the applicant desiring protection from the date of his application, before the policy can be executed in the ordinary course of business, is given and accepts a binder as evidence of 'coverage' or temporary insurance from that date until a policy to take effect as of said date can be delivered, but, in the absence of any express terms in the binder or other undertakings, on the basis of the terms and conditions of the policy contemplated." In *Lipman v. Niagara Fire Ins., Co., supra,* the court said "there can be no doubt that the true construction of the binding-slip only obligated the defendant according to the terms of the policy in ordinary use by the company. There is no other reasonable interpretation of the transaction. . . . The binding-slip was a mere memorandum to identify the parties to the contract, the subject-matter, and the principal terms. It refers to the policy to be issued. The construction is, we think, the same as though it

had expressed that the present insurance was under the terms of the usual policy of the company, to be thereafter delivered.''

Plaintiffs, however, contend for a broader rule than that expressed by the current weight of authority, and they argue that general custom and usage of insurance companies becomes' a material subject of inquiry. In the *Lipman* case the question of usual practice was submitted to the jury for determination, but the court held that *DeGrove v. Metropolitan Insurance Co.*, 61 N. Y. 594, was decisive ''against the view of the learned trial judge,'' and the same principle was applied in *Sherri v. National Surety Co., supra,* and *Dalton v. Norwich Union Fire Ins. Soc.* (Tex. Com. App.), 213 S. W. 230. In *Barre v. Council Bluffs Ins. Co.,* 76 Iowa 609, 41 N. W. 373, that principle was applied to an agreement to issue an insurance policy as distinguished from a temporary insuring agreement. Suit was brought on a contract of the defendant to issue an insurance policy, and the defense interposed was that plaintiff had not complied with the conditions of the policy which would have been issued. After a careful analysis of the questions involved, the court concluded that ''The law will presume that the minds of the contracting parties met upon a contract containing the terms and conditions of the policy usually issued by defendant covering like risks. The contract sued on contained no conditions. But it was not a contract of insurance, but a contract to issue a policy which would be a contract of insurance. But what kind of a policy was to be issued? Plainly just such a policy as defendant usually issued in such cases.''

An examination of the record indicates that plaintiffs failed to prove any custom or usage entitling them to coverage different from that furnished by the company. They called as their witness one Emanuel Rothschild, an insurance broker, who testified that all companies issued five or six types of policies. There is

evidence that in 1938 there were some 150 insurance companies that issued automobile public liability insurance in Illinois. It would thus appear that there are many different insurance policies now in effect in this State, and it would manifestly be difficult to conclude that any one policy was in general use. Rothschild did not testify that the provision under consideration was not usual, but rather that he had never found it used. Defendants' counsel call our attention to the fact that he had sold Central Mutual Insurance policies, which contain such provisions, and that in *Carlson v. Grimsrud, supra,* which is cited by plaintiffs, the policy of that company contained a passenger exclusion clause. In the course of Rothschild's testimony he ventured the statement that "You get what you pay for. I suppose that when you buy a suit for $20, you buy a $20 suit, and when you buy a $20 policy, you get a $20 policy," indicating that price is a vital factor in coverage, and the policies usually furnished by the United States Mutual Insurance Company were undoubtedly predicated upon the fee incidental to membership in the Illinois Automobile Club, which secured to Hall numerous services in addition to the liability insurance. As against the foregoing testimony, Kenneth J. Gross, vice president and general manager of the United States Mutual Insurance Company, who had no connection with the Illinois Automobile Club, enumerated some six or seven insurance companies in this State whose policies contained a similar exclusion.

From the foregoing considerations we conclude that under his contract with the automobile club Hall was entitled to only such coverage as was provided for in the acceptance of his application, according to the terms of the policy in ordinary use by the company, and therefore he was precluded from recovering against the automobile club for injury to a passenger because of the exclusion provision of a policy which the club ordinarily issued.

With respect to plaintiffs' claim against the insurance company, it is argued that because Jennings died in the hospital following the accident and not while riding in Hall's automobile, the policy should be so liberally construed as to avoid the effect of the exclusion clause. This argument is untenable. We think the only fair construction of the policy is that it was designed to and does bar recovery in case of a passenger's death resulting from injuries sustained while riding in the automobile of insured. Any other construction would destroy and render absurd the manifest purpose of the exclusion clause.

Upon the record presented, we are of opinion that the trial court properly entered judgment for the defendants, and it is therefore affirmed.

*Judgment affirmed.*

SULLIVAN, P. J., and SCANLAN, J., concur.