## GREAT AMERICAN INS. CO. OF NEW YORK et al. v. MAXEY.

### No. 13568.

United States Court of Appeals
Fifth Circuit.

Dec. 20, 1951.

James D. McNicholas, Quentin Keith, Beaumont, Tex., for appellant.

Geo. A. Weller, Beaumont, Tex., O. I. Baker, Port Arthur, Tex., Frank M. Adams, Asst. Crim. Dist. Atty., Beaumont, Tex., for appellee.

Before JOSEPH C. HUTCHESON, Chief Judge, and RUSSELL, and RIVES, Circuit Judges.

JOSEPH C. HUTCHESON, Chief Judge.

Brought by the owner of the tug Tallahassee to recover on a marine insurance policy insuring against the hazards of navigation in the open waters of the Gulf of Mexico, the suit was for losses there sustained.

The claim was: that on September 30th, 1948, the Tallahassee had insurance with the Firemen's Insurance Company, limited to operations "in inland waters only"; that plaintiff had obtained a contract requiring operations in the open waters of the Gulf

up to twenty miles out; that, to carry it out, he procured from defendant an oral binder affording coverage for such operations; and that this binder was for insurance in the identical terms of the Firemen's policy, except that, instead of being limited to inland waters, it provided outside coverage as above.

The defenses were: (1) a denial that there was ever at any time an effective binder covering navigation outside inland waters; and (2) that if there was, it was effectively cancelled before any loss had occurred by notice to the assured through his agent, Turnbow.

The case was tried to a jury which for its verdict returned answers[1] to questions submitted to it. The verdict in, and both plaintiff and defendants moving for judgment on it, the court ordered entry of judgment for plaintiff.

Appealing from that judgment, defendants are here insisting: that the evidence will not support the finding of the jury that there was binder coverage for outside waters; and (2) that if this finding is supported, the judgment must still be reversed because the binder was effectively cancelled.

We do not think so. The real, indeed the only substantial, point of contention between the parties was whether the binder of insurance was a conditional binder to hold only until it was determined whether the tug had had a recent marine survey which qualified it for navigation on outside waters and to expire if it was determined that it had not. Unfortunately for appellants, the jury determined that the contract was for outside coverage, and the judge gave judgment on the verdict against it.

The binder of insurance issued on the tug Tallahassee was not a conditional binder but was an absolute binder which incorporated the terms of the Firemen's policy with the addition of providing coverage up to twenty miles in the Gulf of Mexico. If there was any question as to whether this was a conditional binder, this was a matter for the jury. The defendants requested no issue as to whether this was a conditional binder, and the findings of the jury and the findings of the trial court establish as a matter of law that such binder was not conditional but incorporated all of the terms of the Firemen's policy.

As stated in Appleman, Vol. 12, par. 7225, p. 232: "The terms and provisions which control in the construction of the coverage afforded by a binder are those contained in the ordinary form of policy usually issued by the company at that time upon similar risks. The binder is subject to the conditions of the policy contemplated, though such policy may never issue. The standard form of contract in use by the insurer at that time may be referred to to ascertain the coverage, and the binding slip may make the contract subject to the conditions of a statutory form policy * *." See the Texas case of Dalton v. Norwich Union Fire Ins. Society, Tex.Com.App., 213 S.W. 230.

The memorandum,[2] prepared and filed by the district judge on the motions

---

1. These in substance and effect were: that, Jack Turnbow, acting for plaintiff "in the dealings for insurance", and one Kupersmith and Cliff Byrd, acting for defendants, binder coverage was provided for the tug effective Sept. 30, 1948, and covering operations up to twenty miles in the Gulf of Mexico; that on Oct. 3rd, the tug struck a submerged object with resulting damage, the costs of repairing it, with cost of the survey and supervising the repair, aggregating $5,901.68; that on or about Oct. 1, 1948, Kupersmith advised Turnbow that there was no coverage for outside navigation on the Tug Tallahassee issued by any of his companies and that after the Talla-

hassee had departed through the pleasure pier bridge, Turnbow conveyed this information to plaintiff.

2. "On Sept. 30, 1948, plaintiff had a policy insuring the Tug Tallahassee against perils of the sea on inland waters along the Gulf Coast of Texas. This policy will be referred to as the 'Firemen's' policy. On that date, plaintiff contracted to tow a barge containing clay and other supplies for an oil well 'in trouble' 20 miles out in the Gulf from Port Arthur, Texas. He contacted the 'Firemen's' company to secure coverage on the vessel for 'outside' navigation. The 'Firemen's' company declined the added risk.

for judgment, sets out the issues and his views of the law briefly, precisely and, we think, correctly, and we find ourselves in full agreement with the views there expressed. To the authorities he cites, we add, in support of his view that the fifteen day written notice for cancellation contained in the Firemen's policy was, by the

"Thereupon, plaintiff contacted Cliff Byrd, a local insurance agent at Port Arthur, in person and through Jack Turnbow, seeking 'outside' coverage on the vessel. Byrd contacted Kupersmith, General Agent for defendants at Houston, by long distance telephone. Kupersmith authorized Byrd to issue an oral binder, effective Sept. 30, 1948.

"The Tallahassee departed 'outside' late in the evening of October 1, 1948. At about the same time Kupersmith advised Turnbow that there was no 'outside' coverage on the vessel. He did not cancel the policy, but merely advised that there was no 'outside' coverage.

"Turnbow conveyed this information to plaintiff the same evening; but the Tallahassee had departed for 'outside' waters through the pleasure pier bridge near Port Arthur before plaintiff received this information.

"The Tallahassee continued on its tow; and, on October 3, 1948, struck a submerged object and was damaged.

"It was undisputed that the binder was oral. It was likewise undisputed that the policy covered by the 'binder' was to be in identical terms with the 'Firemen's' policy. The principal dispute upon the trial was whether the oral binder extended coverage for 20 miles, in 'outside' waters, as contended by plaintiff, or whether it was confined to 'inland' waters, as contended by defendants.

"Trial was to a jury which found: (1) that Byrd told plaintiff that binder coverage was provided for operations up to 20 miles in the Gulf; (2) that Kupersmith clothed Byrd with the apparent authority to issue the oral binder providing 'outside' coverage on the Tallahassee; (3) that Kupersmith authorized Byrd to bind the Tallahassee for 'outside' navigation; (4) that the Tallahassee struck a submerged object resulting in damage of approximately $6,000.00; (5) that Jack Turnbow was acting for plaintiff in the dealings for insurance upon the Tallahassee; (6) that on Oct. 1, 1948, Kupersmith advised Turnbow that there was no coverage for 'outside' navigation; and (7) that, after the Tallahassee had departed through the pleasure pier bridge, Turnbow told plaintiff that there was no binder of insurance covering navigation in 'outside' waters.

"Both parties have moved for judgment, defendant contending that since the binder was oral, the risk was assumed only until Kupersmith could investigate the risk and either accept or reject it. Defendant cites 44 C.J.S., Insurance, § 49, p. 497; 29 Am.Jur. § 143, pp. 158–159; Appleman's Ins. Law and Practice, Vol. 12, pp. 306, 315, 317; Colorado Life Co. v. Teague, Tex. Civ.App., 117 S.W. 849; Government Employees Ins. Co. v. Hanna, Tex.Civ. App., 219 S.W.2d 122. These citations largely deal with written binders. They are distinguishable from the facts in this case.

"Here, the binder was oral. The jury found that the terms of the oral binder covered 'outside' navigation. As pointed out, it was undisputed that, under the oral binder, the identical terms of the 'Firemen's' policy were to be covered by the oral binder, except for the dispute as to whether the coverage would be for risks in 'outside' waters. All parties testified that the terms would be the same as those incorporated in the 'Firemen's' policy, except as to the dispute on 'outside' coverage. Indeed, defendants pleaded clauses of the 'Firemen's' policy as to the perils insured against, or excluded from coverage.

"The Firemen's policy contained a provision requiring 15 days' written notice in order to cancel. The jury found against defendants on the hotly contested issues of 'outside' coverage. Since the parties had agreed that the terms of the 'Firemen's' policy were incorporated in the oral binder, and it was necessary to look to that policy to determine the risks insured against, the remaining terms as to cancellation etc. must be incorporated, N. Y. & Oriental S. S. Co. v. Automobile Ins. Co., 2 Cir., 37 F.2d 461; Sherri v. National Surety Co., 243 N.Y. 266, 153 N.E. 70; ElDia Ins. Co. v. Sinclair, 2 Cir., 228 F. 833.

"Parol contracts of insurance are valid in Texas, 24 Tex.Jur. 7; Pacific Fire Ins. Co. v. Donald, Tex.Civ.App., 224 S.W.2d 204. Here, the oral binder did not provide for coverage pending acceptance or rejection by Kupersmith. Hence defendants' cases holding that the binder is cancelled upon rejection, are not in point.

"Here, the oral binder covered 'outside' navigation and incorporated all of the provisions of the Firemen's policy in all other respects. That policy re-

contract for the binder, made a part of it, and the binder could not be cancelled without fifteen days written notice: Appleman, Vol. 6, Sec. 4181, p. 705; British-Am. Ins. Co. v. Wilson, 77 Conn. 559, 60 A. 293; VanTassell v. Greenwich Ins. Co., 72 Hun. 141, 25 N.Y.S. 301, 55 N.Y.St.Rep. 431. Cf. also Ætna Ins. Co. v. Texarkana Nat. Bank, Tex.Civ.App., 60 S.W.2d 251; Farrington v. Com. Standard Ins. Co., Tex.Civ. App., 71 S.W.2d 338; Artificial Ice Co. v. Reciprocal, 192 Iowa 1133, 184 N.W. 756.

In addition to the reasons for entering judgment on the verdict advanced by the district judge, appellee urges upon us that if the telephone conversation between Kupersmith and Turnbow, on Oct. 1, 1948, in which Kupersmith advised him that none of his companies were on the risk for outside waters, could be regarded as an attempted oral cancellation, this would not be binding on the plaintiff because Turnbow was not a general agent for him but was only an agent in the matter of procuring the insurance. Among the authorities cited are Appleman, Vol. 6, p. 735, Security Nat. Fire v. Gulf Ins. Co., Tex.Com.App., 41 S.W.2d 17; East Texas Fire v. Blum, 76 Tex. 653, 13 S.W. 572.

In view of our conclusion that the contract required fifteen days notice as a condition to cancellation, we find it unnecessary to determine the correctness of this contention. It is sufficient for us to say that, for the reasons stated in the district judge's memorandum, the judgment is affirmed.

quired 15 days' written notice in order to cancel.

"Kupersmith, on the witness stand, admitted that the policy was still in effect on Oct. 6, 1948, when he addressed a letter to Byrd canceling the policy. Kupersmith further testified that late in the evening of Oct. 1, 1948, he told Turnbow over the telephone that 'outside' navigation was not covered. He did not attempt orally to cancel the policy. Turnbow did not convey this information to plaintiff until after the vessel had cleared the Port Arthur pleasure pier bridge. There was no evidence that plaintiff could have called the Tallahassee back. No jury issue was requested on this point.

"Kupersmith recognized that the written cancellation clause in the Firemen's policy was incorporated in the binder, by writing the letter of Oct. 6, 1948, canceling the policy. Therefore, the conclusion is compelled that the only real issue between the parties was whether the terms of the oral binder extended coverage to 'outside' waters. This the jury resolved against defendants."