## S. L. SHIPMAN, Respondent, v. NATIONAL LIVE STOCK INSURANCE COMPANY, Appellant.

### Springfield Court of Appeals, January 30, 1915.

1. **EVIDENCE: Expert Evidence: Nature of.** Expert evidence is generally purely advisory and, though uncontradicted, is not binding on the jury.

2. ——: ——: **Jury's Right to Weigh.** Action upon a policy of insurance on an animal against death from accident or disease. The defense was a breach of warranty of the sound-ness of the animal at the date of the issuance of the policy. Because a veterinary surgeon who made a post-mortem examina-tion testified, uncontradicted, that the animal had incipient heart trouble at the time the policy was written and that death was a result thereof, does not preclude the jury from finding for the plaintiff.

3. **INSURANCE: Breach of Warranty as Avoidance: Premium Returned: When Not Accepted.** Action upon a policy insur-ing an animal against death from accident or disease. Defend-ant company refused payment on the ground that there was a breach of warranty of soundness of the animal made when policy was written. The insurance company returned to the plaintiff a money order for the amount of the premium paid. This order was not cashed, but an attorney of plaintiff wrote the company that the amount would either be applied on the policy or returned to the company or held subject to the company's order. The order was deposited in court after suit was brought. There was not such an acceptance of the return of the premium as would bar plaintiff's right to recover on the policy.

4. **JUSTICES OF THE PEACE: Pleadings: Formalities.** Formal pleadings are not required in a justice court, a mere statement by the plaintiff being sufficient and a reply is not known in justice court practice.

5. ———: ———: ———. Where a suit on an insurance policy was begun before a justice of the peace, plaintiff, although he did not allege it in replication, may prove an offer to hold the premium returned by the company subject to its order.

Appeal from Lawrence County Circuit Court.—*Hon. Carr McNatt,* Judge.

AFFIRMED.

*M. S. Meyberg* and *Charles L. Henson* for appellant.

(1) When the application for insurance warrants matters upon which the policy is based to be facts, and it is found that they are not facts, the company may rescind the policy and avoid the loss. Jacobs v. Omaha Life Ins. Co., 146 Mo. 523; Whitmore v. Supreme Lodge K. & L., 100 Mo. 36; Johnson v. Town Mutual Ins. Co., 120 Mo. App. 80; Jenkins v. Covenant Mut. Co., 171 Mo. 375; Van Cleve v. Union Casualty Co., 82 Mo. 668. (2) Where the verdict is against conceded physical facts and is contrary to reason, the court will reverse the judgment on that ground. Jaffi v. Railroad, 205 Mo. 450, 456; Nugent v. Milling Co., 131 Mo. 241; Petty v. Railroad, 179 Mo. 666; Dumphy v. Stock Yards Co., 118 Mo. App. 506, 523. (3) Acceptance of a tender must be unconditional. One cannot accept a tender and at the same time prescribe terms of acceptance; if accepted it is on the conditions tendered. St. Joseph School Board v. Hull, 72 Mo. App. 403; Adams v. Helm, 55 Mo. 468; Bahrenburg v. Fruit Co., 126 Mo. App. 526; Cornelius v. Rosen, 111 Mo. App. 619. (4) And the tender must be either refused or accepted on the terms, as made. Adams v. Helm, supra.

*W. Cloud* for respondent.

(1) Juries are required in cases like the case at bar, to apply their own experiences, knowledge and

187MoApp26

judgment, and the issues to be determined, not merely by the opinion of experts, but, further by the exercise of their own judgment of the facts upon which the opinions were given. Head v. Hargrove, 105 U. S. 45; Jones v. Fritzpatrick, 24 S. E. 1030; Cosgrove v. Leonard, 134 Mo. 419. (2) The statement filed with the justice is sufficient at least after verdict and if defective was aided by appellant's answer.

STURGIS, J.—The appellant's statement is so lucid and comprehensive that we adopt it almost *in toto*. Bill Taylor, a fat, gray, five-year-old, $400 jack belonging to the respondent, passed, unexpectedly and unattended, from this earthly life, while in his paddock on respondent's farm, at some time during the night between the 26th and 27th days of April, 1912, and left nothing, except his carcass, to shed any light on the cause of his sudden and unheralded demise. A severe lightning and thunderstorm raged about the paddock that night. Respondent had Bill insured in a local mutual company against death by fire and lightning and with appellant, in the $200 policy sued on herein, "against loss by death coused by *accident* or *disease* (except fire, lightning or cyclone)." Bill experienced no medical examination when appellant insured him, but the policy, dated April 16, 1912, was expressly based solely on the $18 premium paid and the warranties made in respondent's written application for the insurance, dated April 13, 1912; which, among others, were that Bill was then sound and also in good health. After respondent found Bill dead that morning, intense interest centered on the remains to determine, if possible, whether death was caused by lightning, disease or other agency, and that interest is still so centered, in this appeal. Seeking to determine the question, respondent called a graduate veterinary surgeon, who held a *post-mortem* examination on April 30, 1912, in doing which he cut into the car-

cass in respondent's presence. Doctor Pearson, in the proof of loss which respondent sent to the appellant, stated the cause of Bill's death, thus: "Obesity, the accumulation of fat, was present in the thoracic cavity and in the region of the heart, resulting in the lack of heart development in proportion to the size and weight of the animal. Respondent, as a witness in his own behalf, never undertook to tell the cause of Bill's death, and did not know whether it was lightning or what. Bill had missed coming to his feed that morning and respondent went to look for him and found him dead in the pasture; did not know there was anything wrong with him when he signed the application and got the insurance, nor when he lay a corpse, "only he was *dead when I found him;*" admitted that he was in the same condition before his death as at death, except he was alive at one time and dead at the other. The veterinary described the *post-mortem* thus: "After opening up the carcass, after making an incision through the skin, I cut into a layer of fat, which wasn't firm. That is, too much accumulation on the outside under the skin, but we got to the muscles and the thoracic cavity was opened, and in there I found an undue accumulation of fat around the heart, also including some of the structures of the heart. The heart was entirely too small in proportion to the size and weight of the animal." He gave this as being in his opinion the cause of Bill's death. He testified on cross-examination that he could not say how long the obesity around the heart had existed. He thought it had existed more than two weeks, which would cover the date of the policy, but was not certain as to the extent. He also testified that so far as could be discovered by any one seeing and handling him the animal was perfectly healthy up to the time of his death.

Upon receipt of the proof of less containing Doctor Pearson's statement therein, the appellant declined to pay the $200 policy on the ground that respondent

in the written application for the insurance, and as a basis thereof, had warranted Bill to be sound and in good health. Appellant took the position that if Bill died from ''obesity, an accumulation of fat in the thoracic cavity and in the region of the heart, resulting in the lack of heart development in proportion to the size and weight of the diseased animal,'' then as such death was on April 27, 1912, the condition necessarily existed on April 13, 1912, the date the application and warranty were made. Holding the warranty not to be a fact appellant rejected the claim and in the same letter enclosed a United States Postal money order to respondent for $18, the amount of the premium received. Respondent testified that shortly after the claim was declined he placed the matter, money order included, into the hands of his lawyer, and never wrote the appellant anything after receiving the money order. This attorney was permitted to testify, over the objections of appellant, that he wrote appellant a letter a short time after the matters were placed in his hands to the effect that he was representing respondent and that he would bring suit unless the claim was settled within thirty days; that the money order was held subject to appellant's order; if they were willing to let it go as a credit upon the $200. ''We will accept it, but if not, why we offered to return it to them or do whatever with it they asked. It was held subject to their order, and we declined to accept it in settlement.'' That money order was held by respondent, uncashed, from the day of its receipt early in June, 1912, and was openly tendered by the respondent to the appellant at the trial in circuit court, January 17, 1914, who declined it and same was then deposited in court.

This action was brought before a justice of the peace, where a judgment by default was rendered against appellant, and an appeal was taken to the circuit court. The statement filed in the justice court alleges the execution of the policy insuring against the

loss of Bill Taylor, a gray jack; that Bill died April 27, 1912, and demands a $200 judgment against defendant. An answer was filed in the circuit court, admitting the execution of the policy but averring that at the time of its execution the plaintiff warranted by his application therefor that the jack was sound and in good health; that said warranty was not true in that the diseased condition of the jack, resulting in his death, existed at the time he was insured; that on learning this fact the defendant rejected the claim and tendered to plaintiff the amount of the premium paid for the insurance, which plaintiff stills retains. A replication was filed denying these matters. At the close of the evidence a demurrer thereto was asked and overruled.

The court, at plaintiff's instance, instructed the jury that if they found from the evidence that the animal died from some other cause than fire, lightning or cyclone, and that proof of death was duly made, to find for the plaintiff. The court gave three instructions asked by defendant, all to the effect that if the jury found and believed from the evidence that the jack "Bill Taylor" at the time of the application for the policy was not then sound and in good health, their verdict should be for the defendant. A verdict of nine jurors for $200, in favor of plaintiff, was returned and judgment entered accordingly. The court overruled the motion for new trial and the cause is here on defendant's appeal.

Two points are presented here for decision. *First*: That the evidence of the veterinary, who held the *post-mortem* on the body of the jack, conclusively shows that he was diseased at the time plaintiff warranted him to be sound and that the policy is therefore void. The point is not briefed and it is not necessary for us to decide whether an insurance policy based on a warranty of soundness of an insured animal is made void by proof that the animal was in fact afflicted with some incipient or latent disease unknown to both

parties and which would only be discovered, if at all, by an expert and the use of scientific tests. This case was tried on the theory that if the animal was not in fact sound at the issuance of the policy the same was void, and the jury found against this contention. The only evidence offered by the defendant as to the cause of the jack's death and that the diseased condition existed when the policy was issued to the extent of rendering the animal unsound, was the evidence of the veterinary. This was in the nature of expert evidence and the question is whether it is conclusive and precluded a contrary finding. The jurymen were living in a rural community and familiar with domestic animals, their habits, diseases, etc. This animal is conceded to have been perfectly healthy so far as could be seen or discovered by one handling him. It was a serious question whether his sudden death, without known cause, was not caused by lightning, but nothing to justify that theory was discovered. This was the purpose of holding the *post-mortem*. What was the cause of his death, as well as whether such cause or any diseased condition existed two weeks earlier, was a question for the jury. It did not have to determine what was the cause of the death but only to find against the theory advanced by the veterinary. Expert evidence is generally purely advisory and, though uncontradicted, is not binding on a jury. [Hoyberg v. Henske, 153 Mo. 63, 74, 55 S. W. 83.] "Nor do we have to go to physicians to find that medical science has not developed to the point where a doctor, however wise, can tell to a certainty whether a disease exists in the heart for one, two, three or four months after (or before) an injury, or that such insidious diseases not uncommonly baffle diagnosis. It must be borne in mind, too, that doctors' theories under oath on the witness stand are merely advisory in character." [MacDonald v. Railroad, 219 Mo. l. c. 481, 118 S. W. 78.] And, in Beile v. Travelers' Protective Ass'n, 155 Mo.

App. l. c. 644, 135 S. W. 497, the court said: "In the first place we may remark that the jury must determine the fact as to what caused the death; the cause of death is a fact for the jury. [Laessig v. Travelers' Protective Ass'n., 169 Mo. 272, 281, 69 S. W. 469; MacDonald v. Railroad, 219 Mo. 468, 473, 118 S. W. 78.] And this is so 'even where highly scientific propositions are involved.' [Fetter v. Fidelity & Casualty Co., 174 Mo. 256, 266, 73 S. W. 592.] They having the privilege of accepting or rejecting the advice of physicians under oath on the subject. [MacDonald v. Railroad, supra, l. c. 481.]" To the same effect is Poumeroule v. Cable Co., 167 Mo. App. 533, 538, 152 S. W. 114, and many other cases. It will be noted that these cases refer to human beings, but, we take notice that there is a sufficient similarity to make this principle applicable to jacks.

*Second:* The next point is that the evidence, as to the offer by plaintiff, through his attorney, to either credit the returned premium on the amount due under the policy or to return it to defendant and that same was held subject to its order, was not admissible because no such facts were pleaded in plaintiff's reply. The premium was returned in the form of a postal money order. This was not cashed by plaintiff and was offered to be returned to defendant at the trial and, this being refused, was deposited with the court. It is evident that defendant would not have taken it back at any time and had it done so it would have been compelled to keep its tender of this money good. The depositing of the money order with the clerk served that purpose. Of course, if plaintiff collects his judgment without crediting this amount thereon the money order will belong to defendant. As to the matter of pleading which is the point here raised, defendant forgets that this cause originated in a justice court where formal pleadings are not required, nor are they required on appeal to the circuit court. No pleadings,

other than the plaintiff's statement, is required in such cases and a reply is unknown in justice court practice. Under the liberal rules of pleading applicable to cases originating in justice courts the reply actually filed is sufficient.

The judgment will be affirmed. *Robertson, P. J.,* and *Farrington, J.,* concur.