GOVERNMENT EMPLOYEES INS. CO. v. HANNA.

No. 15016.

Court of Civil Appeals of Texas. Fort Worth.

March 4, 1949.

Rehearing Denied April 1, 1949.

124

Martin, Moore & Brewster and Beale Dean, all of Fort Worth, for appellant.

Doyle Willis and Oliver W. Fannin, Jr., both of Fort Worth, for appellee.

McDONALD, Chief Justice.

Appellant, an insurance company, has its principal office in Washington, D. C. It writes policies of insurance on automobiles. Its president at all times material herein was Cleaves Rhea. Mr. Rhea maintains an office in Fort Worth, Texas, where he resides. Appellant's witness Kraus testified to the effect that appellant did not do business in Texas, and that Mr. Rhea attended to appellant's business while making business trips to Washington several times a year. Said witness Kraus, one of appellant's employees, also testified that application blanks, of the kind involved in this case, were available at various points, and that after being obtained and filled out by prospective customers would be mailed to appellant's office in Washington.

On November 3, 1947, appellee Hanna was stationed at an army base near Fort Worth. He desired to obtain insurance on his automobile. He went to certain offices in Fort Worth maintained by Mr. Rhea and certain business firms with which he was connected, talked to some unidentified person in said offices, was handed two copies of an application blank together with a piece of carbon paper, and there undertook to fill out an application for insurance. He was told to keep the carbon copy of the application. Appellee mailed the application, together with a remittance of $77.90 to cover the premium, to appellant, and it is undisputed that appellant received it.

After appellee finished filling out the application, the person in the Fort Worth office looked it over, told him what the amount of the premium would be, and also told him, in response to a question from appellee, that if he sent in the amount of the premium with the application the insurance would be in effect "the minute it was postmarked." While testifying appellee was asked if there was any statement made at such time about whether or not the application was properly filled out, and testified that the person mentioned said it "would be all right." Again appellee testified that he asked said person if the application was all right, and that said person answered in the affirmative. He said that this person got the application blank out of a filing cabinet in the office. This person "looked it up" and told appellee what the amount of the premium would be. He told appellee that the latter "had a duplicate to act as a temporary insurance policy." He told appellee that the policies were issued from Washington. Appellee thought that the insurance would go into effect on November 3, 1947.

The application blank contained fifteen numbered questions to be answered by the applicant for insurance, and was so designed as to be filled in with the data necessary to show what kind of insurance the applicant desired, the amount of each type of coverage, the amounts of the various premiums, motor number and other information as to the identity of the automobile and the name and address of the insured, etc. On the reverse side of the application was a considerable amount of detailed information as to the extent of coverage afforded by the various types of insurance, eligibility requirements pertaining to the applicant, etc.

Near the top of the application blank appears the following declaration:

"Automobile insurance rates are subject to change—Mail application today—To place your insurance in force—Answer all

questions, indicate protection desired, sign and mail with proper remittance. Protection is effective as of postmark time and date unless future date specified."

Near the bottom of the application blank appears the following:

"Make Policy effective at 12:01 A. M. on ——, 194— but in no event before postmark time and date of mailing this application. I (we) declare the facts stated above are true and request the Company to issue its insurance in reliance thereon and it is agreed that the Company has the right to reject this application if the facts given are contrary to the Company's Eligibility Requirements or Underwriting Policy."

Appellee filled in the blank spaces relating to effective date of policy so as to make the application read, "11-3, 1947."

The last statement contained on the application reads as follows:

"Not valid unless application completed, signed and required payment enclosed."

The eighth and ninth numbered interrogatories in the application read as follows:

"8. Has any automobile insurance of applicant or any member of his household ever been canceled or refused?

"9. Has any license or permit to applicant or any of his household to drive a vehicle ever been suspended, revoked or refused?"

Immediately following the last quoted interrogatory, printed in capital letters, appears the following:

"If your answer to either of above questions is yes give detailed explanation on separate sheet of paper and submit with application."

When filling out the application appellee did not write in any answers to questions 8 and 9. His explanation of his failure to answer the questions was that he thought that an answer was required only if the facts called for an affirmative answer, in view of the direction following question 9 quoted above to give detailed explanation in the event of an affirmative answer to either of said questions.

The application and the remittance of $77.90 were received by appellant at its office in Washington on November 5th.

On November 12th plaintiff's automobile was badly damaged by collision. It is clear that the insurance, if then in force, covered such damage. It is also clear from the record that appellant did not learn of the collision until after it had written its letters of November 13th and November 26th, in 1947, hereafter discussed.

On November 13, 1947, appellant wrote appellee a letter, thanking him for the application and the remittance of $77.90, and pointing out that the aforesaid questions 8 and 9, which were copied into the letter, had not been answered. It was said in the letter that owing to the failure of appellee to answer such questions "it will not be possible for us to place coverages in force or issue your policy at this time. Please note your answers in the spaces allotted below." The letter was closed with the following paragraph: "A self-addressed envelope is enclosed for your convenience in replying and we are looking forward to hearing from you at an early date in order that your policy may be issued with a minimum of delay."

Appellee answered this letter promptly, returning the letter with the word "no" written in the blank space following each question (questions 8 and 9 of the application as copied into such letter), and by letter in his own handwriting said. "If this policy cannot be dated when the application was postdated please return my remittance as I thought I was covered from that time."

After it received the check sent by appellee with the application, appellant deposited it with its own funds. On November 26th it sent its own check for $77.90 to appellee, together with a letter saying that it was unable to "place coverages in force" as of the postmarked time of the mailing of the application on account of the fact that appellee's application was not completed.

Trial to the court without a jury resulted in a judgment in favor of appellee for $1220. Appellant's brief presents fourteen points of error.

Separate findings of fact and conclusions of law filed by the trial court are to the effect that the application constituted a

binding temporary contract of insurance which had not been terminated at the time appellee's automobile was damaged on November 12th. The first three of appellant's points of error challenge this theory of recovery.

That an insurance company and an applicant may enter into a binding contract for temporary insurance, to be in force from the time insurance is applied for until the company has either accepted or rejected the application for a policy of insurance, is well settled by the authorities. See the lengthy discussion of temporary contracts of insurance in Colorado Life Co. v. Teague, Tex.Civ.App., 117 S.W.2d 849, writ dismissed; and see also the annotations in 81 A.L.R. 332 and 107 A.L.R. 194.

We think that the terms of the application here involved are intended to provide insurance coverage from the time the letter transmitting the application is postmarked, unless the application requests that the insurance be effective at a later date, where the amount of the premium is sent along with the application, and where the application is filled out in such manner as that from its terms there may be found the necessary requisites of a contract of insurance, such as identity of the insured and the subject matter of the insurance, the risk or contingency insured against, the amount of coverage, the duration of the risk, etc. Appellant argues, first, that even if such application could afford a basis for temporary insurance, it would become effective only in the event the application should be accepted by the insurer, and second, that in any event the temporary insurance would become effective only in the event the application was completed by answering all of the questions contained in it. To be more specific, appellant argues that the insurance did not become effective on November 3rd because appellee did not answer questions 8 and 9.

While in the usual situation an application for insurance is properly treated as an offer from the applicant, to be accepted or not by the insurer, the facts here present a situation where the insurer, by making the application blanks available to the public with the apparent purpose of putting insurance into force before the application could reach the insurer or be acted on by it, makes the initial offer, which is accepted by the applicant when he fills out the application and signs it and sends it to the insurer with a remittance to cover the premium. The result is that a temporary contract of insurance becomes effective when the letter transmitting the application is postmarked, which will remain in effect until the written, formal policy of insurance is issued or until the temporary insurance is terminated by affirmative action of the insurer.

As is shown by the authorities above cited, an application, even though providing for temporary insurance, may make even the contract for temporary insurance conditioned on an acceptance of the application by the insurer. But we do not believe that the application in this case so provides. It provides that the application for insurance may be rejected if the facts shown in the application, to quote from it, "are contrary to the Company's Eligibility Requirements or Underwriting Policy." But we do not regard this clause as precluding a holding that the parties entered into a temporary contract for insurance when appellee filled out the application, signed it and mailed it with a remittance to cover the premium.

Appellant's contention that in no event could temporary insurance become effective unless all questions were answered is entitled to serious consideration. As we see it, the application was intended to serve a dual purpose. On the one hand, it constituted the acceptance of the insurer's offer to put insurance into effect at once, and on the other hand it constituted the automobile owner's application for a written policy of insurance. Under familiar rules of contract law, an offer must be accepted before there is a contract, and it must be accepted according to the terms of the offer. We think that appellee made a substantial acceptance of appellant's offer to put insurance into effect at once (or rather as of the time the letter transmitting the application was postmarked), even though he may have omitted to answer two interrogatories that would have been material only on the

question of whether or not to issue the written policy after the application had been received by the insurer and considered by it. Appellant's witness Kraus declared that it was important to have the information inquired about in the eighth and ninth questions in the application. Such information, however, could have influenced appellant only with respect to the issuance of the written policy of insurance, and could have had no influence with respect to the question of temporary insurance. The temporary insurance would necessarily have been in force several days by the time the application could reach appellant and be considered by it in determining whether to issue a policy or not. If all questions had been answered, whether in the affirmative or in the negative, the insurance would have become effective as of November 3rd, even though appellant might later have declined to issue a policy. We are unable to see how a failure to answer these two questions at all could accomplish a result more adverse to the applicant than would an answer that would have brought about a rejection of the application.

 We have read the application a good many times. We feel that it is not free from uncertainty and ambiguity. Thus it is permissible to look to such of the acts of the parties as would indicate their interpretation of it to find out what their intention was in writing the contract. It is not to be doubted that the printed form of the application was prepared by appellant. The circumstantial evidence at least supports, if it does not compel, a conclusion that the person in Mr. Rhea's office who furnished appellee with the application blanks was an agent of appellant. We do no violence to the rule prohibiting proof of agency by the hearsay declarations of the agent when we say this. Agency, like any other fact, may in a proper case be proved by circumstances as well as by direct evidence. This person obtained the application blank from a filing cabinet, he gave directions about filling it out in duplicate and gave the copy to appellee, he ascertained the amount of premium from data available to him and there is no suggestion that his estimate of the premium was not correct, he examined the application after it had been filled out and declared that it was all right, he told appellee that his insurance would go into effect that day. The circumstances reasonably support a conclusion that this person was an agent of appellant and was authorized to do what he did. His interpretation of the application, as filled out by appellee, was that it was sufficient to put the insurance in force as of the postmarked time of the letter. The evidence shows that appellee thought his insurance would go into effect then. The application reached appellant on November 5th, several days before the automobile was damaged. The record shows no good reason why appellant could not then have notified appellee that his application was being refused and that his temporary insurance had not become effective due to failure to answer questions 8 and 9. Instead of taking action of such unequivocal type, appellant retained the remittance to cover the premium, tentatively assigned a policy number to appellee's application, and on November 13th wrote appellee to the effect that "it will not be possible for us to place coverages in force or issue your policy at this time." The temporary insurance was not something that appellant would place in force after it received and considered appellee's application. It was something that had been in force, if at all, since the postmarked time of appellee's letter of November 3rd, and it went into force without any further action on appellant's part. Appellant's actions evidence one of two attitudes. Either it regarded questions 8 and 9 as pertinent only to the application for the written policy of insurance, or else it was undertaking to hold appellee's $77.90 and continue to treat him as a prospective insurance customer until it could find out what his answers would be to questions 8 and 9 without incurring any liability for any loss that might occur in the meantime. Considering that appellant was acting in good faith, as we ought to do in the absence of evidence to the contrary, the reasonable import of its actions is that it was speaking only of the application for a written policy of insurance, as distinguished from the temporary contract of insurance, in its letter of November 13th.

When we consider the application against the background of the circumstances surrounding its execution by appellee, when we read carefully all that is in it and resolve any doubts against appellant that might reasonably arise from any uncertainties or ambiguities of the language in it, and when we notice the acts of appellant with reference to it, especially those of the agent in Fort Worth, we come to the conclusion that there was in effect a temporary contract of insurance at the time the automobile was damaged on November 12th.

Under its fourth point appellant argues that the undisputed evidence shows that the parties entered into an accord and satisfaction or compromise and settlement of appellee's cause of action, if any he had.

As stated above, appellant at first deposited in its funds appellee's check sent to it to cover the premium. In its letter of November 26th appellant sent appellee its own check for $77.90. Appellee retained possession of the check but did not cash it.

An obstacle in the way of finding either accord and satisfaction, or compromise and settlement, is the fact that appellee had made no claim for insurance at the time appellant sent to appellee its check for $77.90. Appellee had made no such claim, and appellant did not know of the automobile damage. We cannot say that the parties settled a claim that the claimant had not made, and that the other party had not heard of.

Points five to eight inclusive complain of the amount of the recovery. Five, that the court did not invoke the proper legal measure of damages. Six, that the evidence is insufficient as a matter of law to establish the proper legal measure of damages. Seven, that the findings of fact are insufficient to establish the proper legal measure of damages. Eight, that the court erred in finding that the salvage value of the automobile was $230 when the undisputed evidence shows that it was sold in its damaged condition for $300.

The findings of the court are to the effect that the reasonable market value of the automobile immediately before the collision was $1500, and, to quote, "as a result of the accident it was rendered wholly worthless except for its salvage value, which I find to be $230."

There is no claim that the evidence does not support the finding of a reasonable market value of $1500 before the collision. The only testimony as to the damage done to the car came from appellee, and no objection was made to any of it when given. The only estimate made of the cost of repairs was $1100. The car was towed in and put in storage, and remained there eight months, when appellee sold it. He got $300 for it, $70.00 of which went to pay the tow-in and storage fees. Appellee was a mechanic, and had worked on automobiles. He thought that the car was a total loss. On cross-examination he was asked if he recovered any money by virtue of the salvage value of the car, and replied that he got $300 out of which he paid storage and tow-in charges. Further questions and answers on cross-examination were to the same effect.

Appellant's contentions are founded on the notion that the exclusive method of appraising the damage in a case like this is to ascertain the reasonable market value of the automobile immediately before and immediately after and at the place of the collision.

In the first place, we find no merit in the contention that there was a failure to establish value at the place of the collision. The evidence is that the collision occurred while appellee was returning from Denton. We are permitted to take judicial knowledge of the location of the City of Denton, and the reasonable implications are that appellee was returning to his army base near Fort Worth. It was not necessary to prove values at the exact point on the highway where the collision occurred. Fireman's Fund Ins. Co. v. Galloway, Tex.Civ.App., 281 S.W. 283.

No objection was made to the evidence of sale of the salvage eight months later. The trial was to the court without a jury. The reasonable conclusions to be drawn from the evidence are that both parties tried the case on the theory that the car had no market value after the collision, and that the amount received from

the sale of the salvage was the proper amount to be deducted from the reasonable market value of the car just before it was damaged. The only thing filed by appellant which could be regarded as an objection to the court's findings on damages was a request that the court find that appellee received $300 from the sale of the car in the damaged condition. In International-Great Northern R. Co. v. Acker, Tex.Civ. App., 128 S.W.2d 506, 529, writ dis. c. j., judgment was affirmed where the only proof of value of an automobile after being damaged in a collision was that it was "an utter wreck" and was sold for $50.

We agree with appellant's contention that the car was sold for $300 as salvage, and think that $300 (plus the $50 deductible), rather than $230 (plus the $50 deductible), was the proper amount to be deducted from $1500. The application fails to show that the temporary insurance covered loss for tow-in or storage charges. The judgment for $1220 will therefore be reformed by reducing it to $1150.

The ninth point complains of the admission of testimony as to what was said to appellee by the person from whom he obtained the application blanks, on the ground that it was not shown that such person was an agent of appellant or authorized to bind it in any way. The point is overruled in view of what is said above in this opinion.

Points ten to thirteen complain of the findings of fact filed by the trial court. Ten, eleven and twelve complain because the findings did not contain certain quoted language of the application, and thirteen complains of a finding that the application did not contain certain language. The points of error are rendered immaterial by reason of the fact that it is undisputed about what the application contained, both before and after it was filled out by appellee, and we have decided the case on the basis of the language that was contained in it.

Point fourteen complains of the failure of the court to find that the appellee received $300 from the sale of his car in its damaged condition. This point is sustained, and the judgment is reformed as above set out.

One-fifth of the costs of appeal are taxed against appellee, four-fifths against appellant.

The judgment of the trial court is reformed by reducing the recovery awarded to appellee from $1220 to $1150, and as so reformed is affirmed.