George P. HAY, Plaintiff-Respondent,

v.

UTICA MUTUAL INSURANCE COMPA-
NY, Defendant-Appellant.

No. 10190.

Missouri Court of Appeals,
Springfield District.

May 27, 1977.

Motion for Rehearing or to Transfer to
Supreme Court Denied June 14, 1977.

Application to Transfer Denied
July 11, 1977.

Arch M. Skelton, Springfield, for plaintiff-respondent.

Max W. Foust, G. Spencer Miller, Morris, Foust, Beckett & Ponick, Kansas City, for defendant-appellant.

Before STONE, P. J., and HOGAN and TITUS, JJ.

TITUS, Judge.

Plaintiff sued Utica Mutual Insurance Company on a contract for temporary aircraft insurance to recover for the physical damage his Cessna airplane sustained in a landing accident. He also sought interest, damages for vexatious refusal to pay and attorney's fees. § 375.420, V.A.M.S. Subsequent to a bench trial, plaintiff was awarded judgment in the aggregate sum of $5,366.34 and Utica appealed.

On October 27, 1972, plaintiff called insurance man Coonrod to obtain insurance on the just-purchased Cessna. Unable to supply aircraft insurance himself, Coonrod telephoned Fairfax Underwriters Services, Inc., authorized representative for Utica. Fairfax issued and sent to Coonrod a binder which, in part, stated: "This is to confirm that we have bound with Utica . . . the following insurance effective 12:01 a. m. Standard Time Oct. 27, 72 for a period of 30 days." Among other things, the binder designated plaintiff as the named insured and a pilot who could operate the airplane when coverage would be afforded, set forth the amounts of liability and physical damage coverages, stated the amount of the premiums, described the Cessna aircraft and concluded: "This document is intended for use as evidence that the insurance as described herein has been effected and shall be subject to all terms and conditions of policy(ies) which will be issued and that, in the event of any inconsistency herewith, the terms and provisions of such policy(ies) shall prevail."

█ To become effective, a binder must contain the following agreed upon elements: (1) the subject matter; (2) the risk insured against; (3) the duration of the binder; (4) the amount of the coverage; and (5) the amount of the premium. *Sander v. Mid-Continent Insurance Co.*, 514 S.W.2d 634, 637[6] (Mo.App.1974). All of these elements are present in this case.

Eight days after the binder was issued, i. e., Saturday, November 4, 1972, the Cessna, while being piloted by plaintiff, was dam-

aged upon landing when its tail section made contact with a fence post. Coonrod reported the occurrence to Fairfax by telephone on the following Monday, November 6, 1972.

Prior to issuance of the Cessna binder, Fairfax, through Coonrod's endeavors, had issued another binder on plaintiff's Piper airplane effective October 4, 1972, for a period of 30 days. After obtaining the Cessna binder, Coonrod received from Fairfax two identical "Aviation Insurance Application" forms—one for the Piper and the other for the Cessna. The forms were completed by Coonrod, signed by plaintiff and mailed to Fairfax on November 6, 1972. Each form contained this question: "Has any approved pilot been involved in or sustained any aircraft loss, including third party liability, whether or not covered by insurance? _____ If so, give full details . . . on reverse side." Coonrod testified that in preparing the forms he read the question to plaintiff who answered "[N]o . . . '[n]ot in the past five years.'" Coonrod opined this justified his writing a "No" in the blank space on the Piper form and leaving the question unanswered on the Cessna form. Plaintiff said that when inquiry was made regarding losses, he reminded Coonrod he had not operated an airplane for the past 13 years but previous to that he "had a number of accidents" and Coonrod "said he didn't think it would make a hell of a lot of difference." Plaintiff also said he had signed the application forms without reading them.

Under date of November 10, 1972, Utica's aircraft policy on both the Piper and the Cessna was signed "Approved" by Aviation Office of America, Inc. The policy was "Countersigned" by an officer of Fairfax as "Authorized Representative" on November 20, 1972. The policy period stated in the policy was from October 27, 1972, to October 27, 1973. Plaintiff paid a premium of $1,300. The policy was not received by Coonrod until the last of November or the first part of December 1972.

In the course of investigating the accident of November 4, 1972, it was learned that plaintiff had been involved in five aircraft losses between 1957 and 1960. Under date of December 6, 1972, Fairfax wrote Coonrod "that the Company has denied the captioned loss [because plaintiff] did not disclose the proper information on his application where they asked for his loss experience." On January 11, 1973, Coonrod sent the policy to Fairfax requesting a pro rata cancellation. Thereafter, Fairfax sent Coonrod a check for the entire premium paid. Coonrod then sent his $1,300 check to plaintiff which he cashed and kept. However, in computing the judgment the trial court gave Utica credit for the entire premium charged for the physical damage coverage and credit on a pro rata basis for the balance of the premium on the Cessna.

In answer to plaintiff's first amended petition upon which the cause was tried and which was predicated upon the contract for temporary insurance as evidenced by the Cessna binder, Utica affirmatively pleaded that "the aforesaid policy . . . was issued pursuant to a written application for same by the plaintiff . . . and that defendant issued the policy relying upon the warranties made in the application; that the above policy is null and void for the reason that the warranties made in the application for insurance, which are the basis for the policy, were erroneous or false and were material to the risk insured . . . and had defendant known the true facts, [about plaintiff's prior aircraft losses] the policy would not have been issued." Utica further pleaded that due to plaintiff's return of the policy and accepting back the full premium paid, "plaintiff is estopped and barred from bringing and maintaining this action."

It is apparent from Utica's pleadings and the first point relied on in its brief, that the insurer has either misconceived the very foundation of plaintiff's action as pleaded in his first amended petition, or has purposely chosen to ignore the existence of the Cessna binder which evidenced a contract for temporary aircraft insurance effective October 27, 1972, for a period of 30 days. 43 Am.Jur.2d, Insurance, § 216, p. 275. The

suit here is based on the binder—not on the policy. The evidence does not establish just when the policy was issued. All we know is that it was not approved until November 10, was not countersigned until November 20, and was not delivered until after those two events had occurred, all of which was well subsequent to the accident of November 4. "Therefore, the binder was the only contract of insurance in force and effect on the date of the loss." *Midwestern Insurance Company v. Rapp,* 296 P.2d 770, 774[1] (Okl.1956). Under that binder, "so long as it was the only contract in effect, any right of recovery arising within its terms would become fixed and enforcible, irrespective of whether a subsequent policy would ever issue." *Baker v. St. Paul Fire & Marine Insurance Company,* 427 S.W.2d 281, 288 (Mo.App.1968).

■ The seeker of an insurance binder, without solicitation, is not required to disclose information pertinent to warranties, declarations or representations pertaining to issuance of the final policy. *Sherri v. National Surety Co.,* 124 Misc. 450, 208 N.Y.S. 257, 258[1] (1925), aff'd, 215 App.Div. 808, 213 N.Y.S. 909 (1926), aff'd, 243 N.Y. 266, 153 N.E. 70 (1926); 16A Appleman, Insurance Law and Practice § 9255, p. 641. Unless, contrary to the procedure followed here, an application or similar disclosure of facts be a prerequisite to the issuance of a binder, the insured in a contract for temporary insurance could not be held to anticipate what warranties or representations a particular insurer would thereafter seek and rely upon before issuing or refusing to issue a subsequent policy. In the instant case it is undisputed that the binder was issued without Utica or Fairfax asking for or being given any representation, declaration, warranty or statement pertaining to plaintiff's prior aircraft losses, accidents or aircraft insurance experiences. Such information, however, could have influenced Utica only with respect to the issuance of the written policy of insurance, and could have had no bearing on the question of temporary insurance. The temporary insurance on the Cessna was in force at the time of the accident and several days before the

applications reached Utica or its agent. The applications could only have been considered by Utica when deciding whether or not to issue the policy. *Government Employees Ins. Co. v. Hanna,* 219 S.W.2d 122, 127 (Tex.Civ.App.1949). Accordingly, this court must find that the misrepresentations contained in the applications for the policy were not material to nor relied on by Utica or Fairfax in issuing the binder and that liability under the binder may not be avoided for that reason.

■ Utica's second point that plaintiff was estopped to maintain this action because of acceptance of the returned premium was rejected by the trial court and we agree. The policy was not sent to Utica for its cancellation or cancellation of the binder from their inception. Rather the policy was sent for pro rata cancellation after Utica had denied the claim arising from the November 4, 1972, accident which had occurred before the policy was issued. The return of the premium was not prompted due to policy lapse, default or overdue payment (6 Couch on Insurance 2d, § 34:107, pp. 835–836), but to permit Utica to maintain a claim that the policy was void ab initio for the reason stated. As an aside, and worthy of note, is the fact Utica has never questioned the validity of the binder. Nevertheless, whether Utica was required to return the premium before claiming policy coverage was void from the inception is of no moment here. The simple fact is that the premium was returned and kept by plaintiff who, in his acquiescence to the judgment giving Utica credit for that portion of the premium earned, has never agreed to total lack of coverage. Plaintiff testified that he did not accept Utica's payment in settlement of any claim and the course pursued thereafter by plaintiff attests his lack of consent to Utica's contentions. It is certain that Utica would not have taken back the premium, or any part thereof, "at any time, and, had it done so, it would have been compelled to keep its tender of this money good." *Shipman v. National Live Stock Ins. Co.,* 187 Mo.App. 400, 407, 173 S.W. 735, 737 (1915). Further-

more, we do not perceive how an affirmative defense of estoppel can be based upon a person's failure to do a futile act.

■■ Utica's last point is that the trial court erred in awarding damages for vexatious refusal to pay. Statutes providing for damages and attorney's fees for vexatious refusal to pay insurance claims are to be strictly construed because they are penal in nature. *Fohn v. Title Ins. Corp. of St. Louis,* 529 S.W.2d 1, 5[10] (Mo. banc 1975). In the purview of such laws, the term "vexatious" means without reasonable or probable cause or excuse [*Housing Authority of City of Clinton v. Baumann,* 512 S.W.2d 436, 440[5] (Mo.App.1974)], and for an insured to recover for vexatious refusal to pay, he must produce evidence showing that the refusal was willful and without reasonable cause as the facts would appear to a prudent and reasonable man before trial. *Duckworth v. United States Fidelity & Guaranty Co.,* 452 S.W.2d 280, 287[12] (Mo. App.1970). Also, where there is an open question of law or fact determinative of an insurer's liability, if it be acting in good faith the insurer may insist upon a judicial determination of those questions without being penalized therefor. *Cox v. Washington National Ins. Co.,* 520 S.W.2d 76, 81[5] (Mo.App.1974).

■■ Utica did not plead fraud on plaintiff's part. Under Missouri law a nonfraudulent misrepresentation in an insurance application will not void a policy unless it is incorporated into the policy or unless the answers in the application are in the form of a warranty. *American Fire and Indemnity Company v. Lancaster,* 415 F.2d 1145, 1149[5] (8th Cir. 1969), aff'g 286 F.Supp. 1011 (E.D.Mo.1968). The applications signed by plaintiff concluded: "All particulars herein are warranted true and complete to the best of my/our knowledge and no information has been withheld or suppressed and I/we agree that this application and the terms and conditions of the policy in use by the Insurer shall be the basis of any contract between me/us and the Insurer."

We have ruled that the alleged warranted misrepresentations contained in the applications were not germane to an action on the binder which afforded temporary insurance coverage before the applications and the policy came into esse. Nevertheless, in determining whether plaintiff is entitled to damages and attorney's fees for vexatious refusal to pay we must view the situation *before trial* and consider the circumstances as they then existed.

■■ It is apparent that in the inception of the controversy between plaintiff and Utica, plaintiff was claiming under the policy. In fact, plaintiff's claim against Utica as stated in his original petition was founded solely on the policy with no mention whatsoever of the existence of a binder. Coonrod was not Utica's agent, so his knowledge of the falsity of any representations contained in the applications could not have been imputed to the insurer. Therefore, when Utica ascertained the falsity of the answers warranted to be true in the applications, it cannot be said that it then did not have reasonable grounds to believe it was possessed of a meritorious defense to a claim predicated on the policy. Cf. *State ex rel. John Hancock Mut. Life Ins. Co. v. Hughes,* 152 S.W.2d 132, 134–135 (Mo.1941); *Miller v. Plains Insurance Company,* 409 S.W.2d 770, 775[7, 8] (Mo.App.1966). The fact that plaintiff initially misconceived his remedy by claiming under the policy rather than the binder, should not work to prejudice Utica when it reasonably could suppose it had a meritorious defense to that remedy. Moreover, after plaintiff switched horses by amending his petition, that switch did not present a certain path leading to victory. There still remained open questions of fact and law, among others, as to whether under the peculiar circumstances, recovery could be obtained on the binder independent of the policy (see provisions in the binder relating it to the policy, supra) or whether the application warranties would apply to the binder, it being, at least, a segment of "any contract" between the parties. Utica had a right to entertain honest differences of opinion as to its validity and, in good faith, insist upon a judicial determination thereof

without being subjected to penalties for vexatious refusal to pay the loss. *Hammontree v. Central Mutual Insurance Company,* 385 S.W.2d 661, 668[10] (Mo.App. 1965). The fact that judgment on the binder is adverse to Utica does not, per se, make it liable for vexatious damages and attorney's fees under the statutes. *Hounihan v. Farm Bureau Mutual Ins. Co. of Mo.,* 523 S.W.2d 173, 175[7] (Mo.App.1975).

The judgment nisi allowing recovery and interest on the binder for the net physical damages inflicted on the Cessna aircraft is affirmed. That portion of the judgment allowing damages and attorney's fees for vexatious refusal to pay is reversed. The cause is remanded to the trial court from whence it came for entry of a judgment in accordance with the views set forth herein.

All concur.