**Robert L. GETZ, Jr., Respondent,**

v.

**SHELTER GENERAL INSURANCE CO., Appellant.**

**No. WD 35113.**

Missouri Court of Appeals,
Western District.

Oct. 9, 1984.

James Charles Johns, Clinton, for appellant.

Barry Wayne Finkel, Warrensburg, for respondent.

Before TURNAGE, C.J., and MANFORD, and KENNEDY, JJ.

MANFORD, Judge.

This is a civil proceeding in the nature of a claim for recovery pursuant to a contract for insurance. The cause was tried to a jury, resulting in an award in the sum of $5,600. The judgment is reversed.

Appellant (hereinafter Shelter) presents eight points to this court, but due to the disposition of this appeal, only one point is addressed since it is dispositive of this ap-

peal. It is noted, however, that appellant's claimed error concerning the trial court's instruction pursuant to MAI 4.01 (modified) is well taken as the applicable MAI instruction was MAI 4.02.

Shelter charges that the trial court erred in refusing to grant Shelter's motion for directed verdict at the close of respondent's (hereinafter Getz) case and again at the close of all the evidence, because the evidence, when viewed most favorably to respondent, established that respondent made a material misrepresentation in describing the motorcycle and the representation was relied upon by appellant.

In summary, the record reveals the following pertinent facts.[1] In January, 1981, Getz was a member of the United States Air Force, stationed near Knobnoster, Missouri. Getz met one James Hill who was also in the Air Force but operated a private business as well, which was known as Creative Cycles, near Knobnoster, Missouri. Hill's business involved the acquiring of various motorcycle parts from which he would construct specially built motorcycles. In early, 1981, Getz and Hill entered into an agreement whereby Hill, for a price of $5,600, agreed to build a specially constructed motorcycle for Getz. Hill further agreed to finance the purchase/sale. Getz was to make payments up to the sum of $1,000 and then Getz would execute a promissory note for the balance of $4,600. Payments of $180 per month were called for by the note and the note balance was due one year after the date of its execution.

Hill constructed the motorcycle, using various parts which included a used motor, used transmission, used fuel tank, used fenders, used ignition system, and a custom-built frame. Hill later stated that he acquired the motor transmission and fenders at a "swap meet" in Kansas City. Hill also stated that it was not uncommon for such parts to have been stolen. Getz later testified that the motor was a Harley-Davidson engine with a serial number of 2C35792H6 and that the transmission was a Harley-Davidson transmission with a serial number of DA7651. The supervisor of Warranty Processing for the Harley Davidson corporation testified that the engine and transmission were not manufactured by the Harley-Davidson corporation.

On September 25, 1981, Getz filed an application for insurance on the motorcycle. Getz advised one Bess Baird, an employee with a local agent for Shelter, that he had a new 1981 Harley-Davidson motorcycle and sought insurance on the machine. At this same time, Getz tendered to Baird a copy of his title to the motorcycle, which showed the machine to be a 1981 Harley-Davidson motorcycle. Getz did not disclose to Baird that the motorcycle was a specially constructed machine, nor did he disclose that it was of special construction. The evidence established that Getz not only knew the machine was specially constructed, but during the construction that Getz was in Hill's shop at various times. Baird called for a rate and Getz wrote out a check for the premium. Baird later testified that had Getz informed her the machine was a specially constructed motorcycle, she would have informed Getz that she doubted Shelter would insure the machine. The evidence included policy guidelines by Shelter within which specially constructed motorcycles are not to be insured. The reason Shelter does not write policies upon such machines is that it is impossible to place a value upon the various used parts utilized in the construction of such machines.

Getz filed an application for a title with the Missouri Department of Revenue, describing the machine as a 1981 Harley-Davidson. This application was returned, advising the machine could not be titled as a 1981 Harley-Davidson, but that it would have to be titled as a specially constructed motorcycle. It was determined that to secure a title for a specially constructed machine, the applicant would have to furnish bills of sale showing correct engine/transmission identification numbers, along with what was referred to as a DOR–and the return of his premium.

---

**1.** This action followed the denial of Getz's claim

551, which is a vehicle examination form. The records of the Department of Revenue reflected no vehicle examination form. A title was issued and the witness for the Department of Revenue stated that issuance of the title was either due to human error or other human intervention, and that the title should never have been issued.

Getz later testified that he and a friend went to the Alamo Bar in Sedalia, Missouri. He arrived between 9:00 and 9:30 p.m. Upon leaving the bar with his friend, he noticed that his motorcycle was missing from the parking lot. Getz observed a woman, Vikki Engelmann, in a parked automobile. Engelmann had stopped to rest in the parking lot while en route to the Ozarks. Getz questioned Engelmann, and she told him that she saw an individual come from the bar, walk to the motorcycle, and drive off on the motorcycle. Before departing on the motorcycle, this individual approached Engelmann and engaged her in conversation. Later at trial, Engelmann identified the individual who rode off on the motorcycle as Hill, the party who had previously constructed the motorcycle. Engelmann testified that she did not see Hill "hot wire" the motorcycle, nor did she observe anything unusual as to the starting of the motorcycle. While Engelmann testified she saw Hill come from the Alamo Bar, Getz testified that he did not have any pre-arrangement to meet Hill there, nor did he see Hill in the bar.

Other evidence established that other motorcycles constructed by Hill had been stolen and were the subject of insurance proceed claims. It was further established that Getz and Hill would divide any of the proceeds derived from any judgment entered upon Getz's claim for recovery.

The evidence closed. The jury was instructed. The jury returned a verdict for Getz in the sum of $5,600. This appeal followed the overruling of timely-filed post-trial motions.

This cause initiated on Getz's petition to recover for the loss of his motorcycle under a policy of insurance issued by Shelter. Shelter filed its answer, inclusive of an affirmative defense. The affirmative defense, in summary, denied coverage due to a material misrepresentation by Getz in his application for the insurance coverage. The record shows no reply by Getz to the affirmative defense.

The record shows no dispute as regards the following pertinent and crucial facts.

Getz conceded that he listed in his application that the motorcycle was a new 1981 Harley-Davidson. The vehicle was described as such by Getz to Shelter. By way of his petition and upon admission at trial, Getz declared the representation of the motorcycle as a new 1981 Harley-Davidson, while in fact the motorcycle was a specially constructed motorcycle. The evidence is uncontroverted that Getz knew from the outset that the motorcycle was a specially constructed motorcycle constructed from various used parts and a special frame. The evidence was also uncontroverted that Shelter's policy underwriter guidelines prevented issuance of coverage on specially constructed vehicles.

Even on this appeal, the parties do not dispute the fact that the motorcycle was misrepresented, but rather, the dispute centers upon whether such misrepresentation was material as to void the policy coverage.

Shelter cites to *Miller v. Plains Insurance Co.*, 409 S.W.2d 770, 775 (Mo.App. 1966), which ruled that a material misrepresentation will serve to void a contract for insurance. The court in *Miller* went on to point out that "[a] material misrepresentation, as noted by the previously cited authorities, will serve to avoid a contract even though the misrepresentation be made through mistake. Funk & Wagnell's New Standard Dictionary of the English Language 1952, defines mistake as 'an act or omission arising from ignorance or misconception.' 'The essential prerequisite of mistake is ignorance * * *' 58 C.J.S. Mistake, p. 830. Also, ' "a mistake of fact takes place, when some material fact, which really exists, is unknown * * * ." ' " (citations omitted) Consequently, it would appear Mrs. Gales was bound by the nega-

tive answer appearing on her application * * * "

Thus, *Miller* rules that a misrepresentation of a material fact does not rest upon falsity or an attempt to mislead, but rather, such a misrepresentation can arise even if made in good faith.

In a latter decision, the rule in *Miller* was reaffirmed, but the court refined the principle even further. In *Haynes v. Missouri Property Insurance Placement Facility*, 641 S.W.2d 497, 499 (Mo.App.1982), the court declared:

"The fact that there were misrepresentations are not sufficient alone to void the policy. A representation in an application for insurance, which is not in the form of a warranty or incorporated in the policy itself, must not only be false, but also material to the risk in order for the insurer to avoid its policy. *Weekly v. Missouri Property Insurance Placement Facility*, 538 S.W.2d 375, 378 (Mo. App.1976). The materiality of a misrepresentation in an insurance application is determined by whether the fact, if stated truthfully, might reasonably influence an insurance company to accept or reject a risk or to charge a different premium and not whether the insurer in question was actually influenced."

A warranty relative to insurance matters has been defined as:

"A warranty in the law of insurance consists of a statement by insured upon the literal truth of which the validity of the contract depends. Statement, made in insurance contract by insured, which is susceptible of no construction other than the parties mutually intended that policy should not be binding, unless such statement be literally true. (citation omitted)

A statement, description or undertaking on the part of insured, appearing in the policy or in another instrument properly incorporated in the policy and relating contractually to the risk insured against." *Black's Law Dictionary* 1424 (5th Ed.1979)

It must be concluded that Getz's declaration in his application for insurance, his oral confirmation to Baird and the presentment of a title that the motorcycle was a new 1981 Harley-Davidson certainly sets forth a warranty within the above definition for same.

In furtherance of its argument, Shelter cites to *Smith v. American Automobile Insurance Co.*, 188 Mo.App. 297, 175 S.W. 113 (1915), which ruled that where an insurer published underwriting guidelines prohibiting agents from issuing fire insurance policies on certain automobiles, when the plaintiff misrepresented the vehicle to be insured as a 1910 model when in fact it was a 1908 model, it was held that such a misrepresentation was material without regard to whether the misrepresentation was made in good faith or not. This rationale rested upon the fact that the misrepresentation affected the very subject matter of the contract.

Shelter asserts that *Smith* is directly on point and this court agrees.

There is other authority that a misrepresentation of a motor vehicle as new is, as a matter of law, material as to the risk involved. *Andrews v. Bull Dog Auto Fire Insurance Association of Chicago*, 258 S.W. 714 (Mo.App.1924).

In contrast, Getz refers this court to the following authority, asserting that said authority refutes the position of Shelter. This court is referred to *Hay v. Utica Mutual Insurance Co.*, 551 S.W.2d 954, 958 (Mo.App.1977), *American Fire and Indemnity Co. v. Lancaster*, 415 F.2d 1145, 1149 (8th Cir.1969), and *Farmers Mutual Fire & Lightning Association v. LaVallee*, 501 S.W.2d 69, 74 (Mo.App.1973). It is the position of Getz that he did not in fact warrant any fact "that has been alleged to be material representation." Getz then postures his argument upon a basis that "bad faith" is necessary to constant misrepresentation which would allow Shelter to avoid the contract.

Getz relies upon *Hay* for the proposition that such a misrepresentation must be in the form of a warranty. As noted above, a warranty is disclosed by the evidence here-

in. In addition, *Hay* does not apply to the instant case because it did not involve an application or a policy of insurance, but rather, it involved a binder for insurance coverage wherein the insurer did not request any "representation, declaration, warranty, or statement." Getz's reliance upon *Hay* is misplaced. That case is clearly distinguishable and had no application to the present case.

The *American* case was an action for declaratory judgment seeking to have an auto liability insurance policy declared void on the basis of a material misrepresentation. Relief to the insurer was denied when upon the evidence it was revealed that the insured had disclosed to the insurer's agent a prior accident and the salesman did not disclose that information on the application. This case also involved the initiation of an application prior to an accident and the completion thereof subsequent to the accident. The case also involved the absence of evidence by the insurer that reporting a prior traffic violation would have resulted in failure of the insurer to accept the risk or to charge an increased premium.

In the instant case, the evidence revealed that Shelter does not insure specially constructed motorcycles. *American* does point out one thing, that under Missouri law, fraud in the misrepresentation is not required. Getz's reliance upon *American* is misplaced. That case is distinguishable from the instant proceedings and has no application herein.

*Farmers* was an action for declaratory judgment relative to a fire insurance policy. The insurers sought a declaration of its rights and obligations under the policy. The evidence in *Farmers* revealed that the insurer's agent filled out part of the application in pencil in the presence of the insured. It was also determined that the remainder of the application was completed by another employee of the insured out of the presence of the insured. The case was tried to the court. The evidence was highly controverted and given by oral testimony and the main issue was whether the repre-

sentation (or misrepresentation, if preferred) in fact ever occurred. This court concluded that "this case does not present a situation where the insured gave false information or was guilty of any misrepresentation of material facts in the application for insurance." That case is far removed from the instant case where upon both the pleadings and the evidence, it is not disputed that Getz represented to Shelter that he sought coverage of a new 1981 Harley-Davidson motorcycle.

In conclusion, the particular facts and circumstances herein bring this case squarely within the rules announced in *Miller, Smith,* and *Haynes, supra* which in turn dictate reversal of the judgment herein.

The judgment is, for the reasons set forth herein, reversed.

All concur.